ANTHONY GOSTKOWSKI, Respondent, *v.* THE ROMAN CATHOLIC CHURCH OF THE SACRED HEARTS OF JESUS AND MARY and Another, Appellants.

Second Department, January 27, 1933.

*Guy O. Walser,* for the appellants.

*J. Harry Saxstien* [*Isidore Scheinberg* with him on the brief], for the respondent.

YOUNG, J. The action was brought to recover damages against the defendants for wrongfully causing the remains of plaintiff's wife to be disinterred and removed from its grave.

The plaintiff, Anthony Gostkowski, with his wife and family, lived in the town of Southampton, Long Island, N. Y. Mrs. Gostkowski was a member and parishioner of the defendant church. She died on July 13, 1931. The plaintiff husband then

bought a right of burial in a plot in defendant's cemetery at Southampton, Long Island, paying fifty dollars therefor, and the remains of his wife were buried therein. Some three weeks later, plaintiff discovered that the body had been removed and was resting in another grave newly made, not far off, and upon inquiry the keeper of the cemetery informed the plaintiff husband that the body of his wife had been disinterred some two weeks before and placed in another plot. This was done upon the order of defendant Killeen, the parish priest, and without notice to the plaintiff husband or any of his family, the reason for the transfer being that defendant Killeen discovered that the plot in which the body had been placed originally belonged to another. Defendant Killeen not only failed to notify the family in advance of the transfer, but he did not notify them at all after the transfer had been made. Thereupon the plaintiff went to see defendant Killeen, who told him that he had forgotten to notify him of the transfer; and the plaintiff testified that at this time a conversation was had between him and defendant Killeen in which defendant Killeen told him that "Polish people should be glad to bury any old way," and if plaintiff did not like what had been done he could take the body up and go elsewhere.

Upon the trial the defendants made no motion to dismiss the complaint at the close of the evidence, thereby conceding that a question of fact existed for the jury involving an assessment of damages.

At common law the husband had a legal right to have the body of his wife remain in its burial place free from interference. Many cases are cited to this effect. In *Finley* v. *Atlantic Transport Co.* (220 N. Y. 249) the Court of Appeals, by Judge HOGAN, said: "The plaintiff had a legal right to the possession of the body for burial and any unlawful interference with that right was an actionable wrong. The right preserved to the plaintiff was a common-law right, and the direct and proximate consequence of an actionable wrong is a subject for compensation."

In *Hutchinson Land Co., Inc.,* v. *Whitehead Brothers Co.* (127 Misc. 558) the court said: "While there is no right of property in a dead body in the ordinary sense of the term, it is regarded as property so far as it is necessary to entitle the next of kin to legal protection from violation or invasion of its place of burial. (17 C. J. 1137, 1138.)"

And in *Danahy* v. *Kellogg* (70 Misc. 25) the court said: "The husband, widow or next of kin have no proprietary interest in human remains, strictly speaking; but the law has been relaxed in that respect to the extent of giving them the right of protecting

the remains of the dead and saving them from desecration, which can be enforced by appropriate legal remedies (*Foley* v. *Phelps*, 1 App. Div. 554; *Cohen* v. *Congregation*, 85 id. 65), which is a right clearly distinguishable from the right of ownership."

It seems to be the settled law that in case of the death of the wife leaving a husband surviving he has the paramount right to the possession of the dead body of his wife for the purposes of preservation and right of burial. (*Foley* v. *Phelps*, 1 App. Div. 551, 554; *Larson* v. *Chase*, 47 Minn. 307.) This Minnesota case was approved by our Court of Appeals in *Darcy* v. *Presbyterian Hospital* (202 N. Y. 259, 262).

The right of the husband to maintain this action being unquestioned, the question next arises as to what damages may be recovered.

In *Stahl* v. *Necker, Inc.* (184 App. Div. 85, 90) it was said: " The law seems to be well settled in this State that in the absence of testamentary disposition to the contrary, a surviving husband or wife or the next of kin have the right to the possession for the purpose of burial or other disposition which they may see fit to make of the body of a deceased relative. They are entitled to such right of possession as a solace and comfort in their time of distress. One who deprives a party thus entitled to the remains of a departed relative from the solace and comfort arising from the privilege of such burial or disposition as they may desire to make, is liable in damages for the mental suffering and anguish to the surviving relative by reason of such deprivation.

" The leading case is that of *Larson* v. *Chase* (47 Minn. 307). That case holds that the possession of a dead body for the purposes of preservation and burial belongs, in the absence of testamentary disposition, to the surviving husband or wife or next of kin of the deceased, the rights of a surviving wife, if living with her husband at the time of the latter's death, being paramount to that of the next of kin, and that damages are recoverable for injury to the feelings and mental suffering resulting directly or approximately from the wrongful act of deprivation, although no actual or pecuniary damages be proven." (See, also, *Darcy* v. *Presbyterian Hospital*, 202 N. Y. 259; *Foley* v. *Phelps*, 1 App. Div. 551.)

The case of *Henry* v. *Vintschger* (234 App. Div. 593) is cited by appellants' counsel. That was an action brought by a widow to recover damages against the defendant for burying her husband in a cemetery without her consent. The appeal was from an order of the Special Term striking out certain defenses in the answer, the court holding that these defenses should not have been stricken out; and in the course of the opinion Justice MERRELL said that

it was a matter of serious doubt whether the plaintiff could recover money damages in that case, because it was only in cases where a body has been mutilated or destroyed that a recovery of money damages had been sustained. This statement, however, was clearly dictum, because the point of the decision was that the cemetery association, which made the burial according to the directions of the decedent's next of kin, should not be held liable at all.

The plaintiff had the right of burial in the plot he had purchased and the defendants were trespassers when they invaded the plot and dug it up. For this trespass plaintiff would certainly have a cause of action, although his damages for injury to the plot might be small. In connection with this trespass, the defendants wrongfully removed and disposed of the body of plaintiff's wife. The plaintiff husband was clearly entitled to the right of possession of this corpse, and for depriving him of such possession the defendants are also liable, and the damages recoverable include damages for mental suffering and anguish by reason of such deprivation. Such is the holding of the cases cited. As I read them, they do not hold that compensatory damages may be recovered only where there is gross negligence or wanton recklessness. I have no doubt that without such proof full compensatory damages may be recovered, and this would include damages for mental suffering and anguish. If, however, anything more than compensatory damages are to be recovered, then there must be proof of gross negligence, willful conduct or reckless disregard of plaintiff's rights. The county judge in the present case charged the jury as follows: " The plaintiff asks the following requests:

" ' In an action such as this the jury may inflict what are called exemplary, punitive or vindictive damages upon the defendants, taking into consideration the enormity of their offense rather than the measure of compensation to the plaintiff.'

" I charge that only on the fact that you would find that the acts of the defendants were wilful and malicious and wanton as urged in the complaint.

" ' Damages in this class of cases are usually given by way of compensation to the injured party for the wrong sustained by reason of the injury to his property; but if the jury find that the acts complained of were committed maliciously and wantonly, and under circumstances indicating such an entire want of care as to raise the presumption of conscious indifference to consequences, or gross negligence on the part of the defendants, the jury are authorized to impose damages by way of example and punishment in addition to those awarded as compensation to the plaintiffs.'

Only in connection with the other charges, if those acts were malicious and wanton."

It will be seen, therefore, that the trial judge permitted the jury to find upon the evidence that the action of defendant Killeen was willful and reckless and in disregard of the rights of the plaintiff.

It may be doubtful whether the evidence upon the subject justified this charge. Defendant Killeen said that he overlooked giving notice to the plaintiff before he removed his wife's body. He also forgot to notify him when it had been done. In addition to this, the testimony of the plaintiff husband was to the effect that, when he went to see defendant Killeen, he was treated very badly and was told by him that the place in which his wife was finally buried was good enough for her and good enough for him and that, if he did not like it, he could get another plot somewhere else and take the body out of his cemetery; that the place where she was buried was good enough for Polish people; that they should be glad to be buried "any old way."

Defendant Killeen, although testifying, did not deny this conversation. The record also contains a letter from defendant Killeen, as follows:

"*Aug.* 28, 1931.

" SAXSTEEN & SCHEINBERG,
" Riverhead, N. Y.

" DEAR SIR: In reference to your letter in the Gostkowski matter,— permit me to make the following observations:—

" 1) Out of a spirit of Christian decency,— I'm willing to pay $\frac{1}{2}$ the expenses of disinterring & reinterring the body of Mrs. Gostkowski.

" 2) The disinterrment & reinterrment of the body will be done by the Supt. of the Cemetery Mr. Corrigan, or by no one.

" 3) As far as I am concerned, count me out of any meeting of parties involved.

" Let me remind you that our cemetery is a parish cemetery. Mr. Gostkowski is not one of our parishioners. Any burial rights given him in that cemetery were graciously granted him out of respect to Mrs. Gostkowski. If he is dissatisfied with the treatment accorded him, let him move the body elsewhere,— surrender his burial rights & I shall gladly refund his $50.00.

" Sincerely yours,
" GEO. H. KILLEEN."

This letter was written by defendant Killeen to plaintiff's attorneys and shows, I think, rather a dictatorial and unsympathetic attitude. It may be a question whether there is sufficient to justify

a finding that the defendant's action was malicious, or done with intentional disregard of plaintiff's rights. It may be, also, that the jury would be justified in finding that defendant Killeen did not think it was necessary to notify the plaintiff or his family, as they were Polish people; that he acted willfully and went ahead with full knowledge that he had not notified them. If he did this, the jury might well say that his conduct was in reckless disregard of plaintiff's rights, and so malicious.

In any event, I think the verdict is excessive and should be reduced, and that the judgment of the County Court of Suffolk county should be reversed on the facts and a new trial ordered, costs to abide the event, unless within ten days from the entry of the order herein the respondent stipulate to reduce the verdict to the sum of $1,000 plus costs, in which event the judgment, as thus modified, should be affirmed, without costs.

TOMPKINS, J., concurs; LAZANSKY, P. J., concurs in result; CARSWELL and SCUDDER, JJ., dissent and vote for reversal and a new trial, with the following memorandum: At the close of the evidence defendant made no motion to dismiss. This was a concession that a question of fact existed for the jury and necessarily involved an assessment. Even if a motion had been made, a submission to the jury would have been proper. The charge of the court was erroneous in so far as it authorized the jury to assess punitive damages. The assessment was excessive if it be measured by the rule of compensatory damages. It continues to be excessive as reduced. Hence there should be a new trial in order to leave the amount of compensatory damages to a jury.

Judgment of the County Court of Suffolk county reversed on the facts and a new trial ordered, costs to abide the event, unless within ten days from the entry of the order herein the respondent stipulate to reduce the verdict to the sum of $1,000 plus costs, in which event the judgment as thus modified is affirmed, without costs.