In the Matter of the Estate of PETER F. CAVA, Deceased.
In the Matter of the Estate of MARY CAVA, Deceased.

Surrogate's Court, Kings County, July 23, 1940.

*Walter Jeffreys Carlin* [*Pallister Hamilton Feely* of counsel], for the Lafayette National Bank of Brooklyn in New York, as administrator, etc., in each estate.

*George C. Weber* for William Romer, claimant.

*Angelo J. Cincotta,* special guardian for Peter Cava, infant distributee.

WINGATE, S. Peter F. Cava and his wife, Mary, died August 7, 1938, as a result of a stroke of lightning. It is conceded that there is no proof either of their simultaneous deaths or that either survived the other. They were survived by a son, who, at the time of the occurrence, was one year and ten months old. Aside from the insurance policy, the proceeds of which are here in question, the estate of the husband totaled $126.75, subject to administration and funeral expenses and potential debts of $45.20, and that of the wife to $16, subject to administration and funeral expenses.

Mrs. Cava's father took charge of the remains of both, and expended a total of $1,001.64 for their joint funeral, for which he is presently seeking reimbursement.

The crux of the controversy as submitted to the court relates to the estate to which the proceeds of an insurance policy on the life of the husband belongs. These proceeds total $2,045.36. The policy was, according to its terms, payable to the wife. The only provision therein which is pertinent to the present controversy reads: " In the event of the death of any Beneficiary before the Insured the interest of such Beneficiary shall vest in the Insured unless otherwise provided herein or endorsed hereon."

The claimant asserts that the proceeds of the policy belong to the estate of the husband, urging *McGowin* v. *Menken* (223 N. Y. 509) as an authority. He cheerfully admits that the language of the policy in the cited case was that it was payable " to his widow, if living; if not, to his executors," but professes to perceive no distinction between the two wordings. He also refers to *Dunn* v. *New Amsterdam Casualty Co.* (141 App. Div. 478) and seeks to identify this court therewith by the statement that it was cited with approval in *Matter of Valverde* (148 Misc. 49). If the counsel will refer to the *Valverde* case (at pp. 51, 52) he will find that this court expressly refused to follow the majority result in the *Dunn* case in the only aspect in which it is at all presently pertinent, in which refusal it was sustained by the Appellate Division and the Court of Appeals.

The distinction between the language of the McGowin policy and that of the present case is pointed out in *Matter of Valverde* (148 Misc. 49, 51; affd., 242 App. Div. 653; affd., 266 N. Y. 620), in which the terms of the policy itself were substantially similar to the language in the McGowin policy, whereas that of the application remotely resembled that of the present. This court held the

application controlling and awarded the insurance to the estate of the husband, experiencing unanimous affirmance in both appellate courts.

Returning to the language of the present policy, it is payable to the wife, subject to the limitation that " in the event of the death of " the wife (" any Beneficiary ") " before the insured " the proceeds should be payable to the estate of the latter. In other words, the proceeds were payable to the wife subject to the demonstration of a divesting condition that she had died " before the insured." Before such divestment can occur, it must be shown that the stipulated condition has met with compliance, that she has died " before the insured." Admittedly no such proof is here available, wherefore the condition has never met with compliance and the divestment of benefit has not taken place. The proceeds of the insurance accordingly belong to the estate of the wife.

In the opinion of the court, however, it does not follow from the attainment of this result that the reasonable funeral expenses of the husband must be defrayed by a stranger under penalty of pitching his corpse into the quick-lime of Potter's Field. There is a very real public policy attaching to the decent interment of the remains of a decedent, which has been carried to the point of compelling the estate of an infant to pay for the funeral of his parent where other means were lacking. (*Matter of Neville*, 147 Misc. 171; *Matter of Connolly*, 88 id. 405.) A widow possesses the authority for direction as to the manner of interment of her husband's remains (*Gostkowski* v. *Roman Catholic Church*, 237 App. Div. 640; Id. 910; affd., 262 N. Y. 320; *Apostle* v. *Pappas*, 154 Misc. 497, 498, 499), and it has been held that, in the absence of assets, the obligation for decent disposal rests upon the person to whom such right is accorded, by law. (*Matter of Kulyk*, 150 Misc. 307, 310; 243 App. Div. 443. See, also, *Matter of Billman*, 143 Misc. 765, 766.)

In the present situation, the wife, if living, would have been under obligation to defray the reasonable cost of the funeral of her husband and no reason is perceived why her estate should not bear a like burden. It is accordingly the conclusion of the court that in so far as the assets of the husband's estate are inadequate for the purpose, minimum charge for his funeral is payable by the estate of the wife.

The question thereupon arises as to what such permissible sum should be determined to be. In this evaluation, the sum actually expended presents a minimum of importance. Perhaps the most important consideration in this connection is the size of the decedent's estate. (*Matter of Lanza*, 149 Misc. 95, 97; *Matter of Amelio*, 153 id. 52, 53.) As hereinbefore noted, the total gross assets of the husband totaled $126.75. In such a situation, no more than $200 is capable of characterization as " reasonable."

The final question relates to the sum which was "reasonable" of expenditure for the funeral of the wife. The assets of her estate are sixteen dollars plus the proceeds of this policy. In fixing the sum which is permissible of award, it must be borne in mind that the remainder of these assets is all which stands between her one and a half year orphan child and support by charity. In view of this circumstance, as well as the paucity of her estate, no more than $250 may be allowed.

In conclusion, and in reply to the urging of the claimant that greater liberality should be exercised in the quantum of funeral allowances by reason of the asserted fact that the elaborateness of the obsequies were in accordance with the national custom of the parties, the court can but reiterate its statement on a former application in this case: " The customs of various groups of individuals respecting the nature of funeral ceremonies are always academically interesting. They cannot, however, override the express provisions of law as contained in section 216 of the Surrogate's Court Act, that no expenditure in excess of an amount which is reasonable in view of all the pertinent circumstances of a given situation is permissible." If relatives of a decedent, for the purpose of " saving face " with their national or racial associates, wish to spend their own money for this purpose, such act is a privilege with which the court could not and would not interfere. It has and will, however, steadfastly decline to validate such disbursements beyond a minimum sum when they trench upon the future sustenance of widows and orphans.

The assets of the husband will be used primarily in defraying the expense of administration of his estate with any overplus to be applied on the $200 allowed for his funeral. Those of the wife, including the proceeds of the insurance, will be used to pay her administration expenses, the $250 for her funeral and the balance of the sum for the husband's funeral, with the remaining sum payable to a guardian for the orphan, to be appointed.

Enter decree on notice in conformity herewith.