HASSARD v. LEHANE.

(Supreme Court, Appellate Division, First Department.　March 10, 1911.)

1. DEAD BODIES (§ 9*)—RIGHT OF POSSESSION—CIVIL LIABILITY FOR ILLEGAL
ACTS—DAMAGES.

A mother legally entitled to the possession of the corpse of her son may recover of one illegally dissecting or otherwise mutilating the remains damages measured by the injury to her feelings caused thereby.

[Ed. Note.—For other cases, see Dead Bodies, Cent. Dig. §§ 13, 14; Dec. Dig. § 9.*]

2. DEAD BODIES (§ 1*)—DISPOSITION—CORONER'S PHYSICIAN—DISSECTION OF
BODY.

Pen. Code, § 305, in force in April, 1907, authorized a decedent to direct the manner in which his body should be disposed of after his death. Section 306 provided that every dead human body within the state should be decently buried, etc., except in cases in which a right to dissect it is expressly conferred by law. Section 308 authorized dissection in cases prescribed by special statute, to the extent authorized by a coroner holding an inquest, for the purpose of ascertaining the cause of death when and so far as authorized by the husband, wife or next of kin charged by law with the duty of burial, and under the direction of the district attorney, etc. Section 309 made dissection without authority of law or pursuant to decedent's permission a misdemeanor. Section 310 provided that in all cases in which a dissection has been made the provision requiring burial of a dead body and other provisions punishing interference with and injuries to it shall apply equally to the remains of the body dissected as soon as the lawful purposes of such dissection are accomplished. Held, that such provisions did not authorize the coroner's physician to dissect remains in the absence of the coroner's direction.

[Ed. Note.—For other cases, see Dead Bodies, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

3. DEAD BODIES (§ 1*)—AUTOPSY—REMOVAL AND DETENTION OF ORGANS OF DE-
CEASED.

Even if under such sections an autopsy was authorized by the coroner, this did not justify the removal and detention of any organs by the coroner's physician on the ground that the case was an interesting one.

[Ed. Note.—For other cases, see Dead Bodies, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

4. DEAD BODIES (§ 1*)—AUTOPSY—REMOVAL OF ORGANS OF DECEASED.

Under Laws 1873, c. 833, § 2, authorizing a coroner when necessary to employ competent surgeons to make post mortem examinations and dissection and to testify to the same, and Consolidation Act (Laws 1882, c. 410) § 1773, providing that when any person shall die by a casualty, etc., the coroner shall subpoena one of the coroner's physicians who shall view the body externally or make an autopsy thereon as may be required, etc., while a coroner's physician directed by the coroner to make an autopsy may dissect the body, he may not, in the absence of further directions from the coroner or district attorney, remove or detain any part of the body.

[Ed. Note.—For other cases, see Dead Bodies, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

Appeal from Trial Term, New York County.

Action by Mary Hassard against Timothy D. Lehane. From a judgment dismissing the complaint pursuant to a nonsuit granted at the close of plaintiff's case, she appeals. Reversed, and new trial granted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

August P. Wagener, for appellant.

Clarence L. Barber, for respondent.

LAUGHLIN, J.   This is an action by a parent to recover damages for the wrongful and unlawful dissection of the remains of her son, and for the wrongful and unlawful removal and detention of parts of the remains.   On the 2d day of April, 1907, one Frank Hassard, the plaintiff's son, a coach driver of the age of 28 years, while driving a coach returning from a funeral, was thrown from the coach in 106th street, in the borough of Manhattan, New York, by an obstruction projecting from a building that was being erected adjacent to the street.   He was removed to a drug store in the vicinity, and an ambulance was summoned, and he was taken to the Harlem Hospital, where he arrived at 8:30 p. m., and died at 10 minutes before midnight.   The defendant performed an autopsy on the body, and removed the heart and spleen, and cut them into many pieces, and had them preserved in alcohol in a jar in his office, and he refused on demand of a sister of the decedent made at the instance of the plaintiff to replace them in the body from which he had removed them.   It was conceded that the decedent was unmarried, had no children, and resided with the plaintiff, who was his mother, and that upon her rested the obligation to bury the remains, and that she "had a right to bring this action."   It also appeared that it was known that the decedent left a mother and relatives, and their whereabouts was known, but their consent to the autopsy was neither requested nor obtained.   It further appears that complaint was made to Coroner Harburger in behalf of the plaintiff, and that he summoned the defendant and inquired why the autopsy was made when the death was not involved in mystery, and there was no suspicion concerning it, and the only explanation offered by the defendant was that the decedent had a greatly enlarged spleen, and it was an interesting case.   The defendant did not even claim to have been directed by a coroner to hold an autopsy.   He merely asserted that it was "his privilege to make the dissection."   It appears that the plaintiff became aware of the fact that the body had been dissected and these organs removed and not replaced, and that she was greatly distressed thereby.   A certificate made by Coroner Dooley, to the effect that he had taken charge of the remains on the 3d day of April, 1907, and was holding an inquest thereon was offered in evidence, together with a certificate made by the defendant, signed "T. D. Lehane, Coroner's Physician," certifying that the decedent died on the 2d day of April, 1907, and "that the cause of his death was abdominal hemorrhage, rupture of spleen; fell off a carriage."

The plaintiff on the facts stipulated had a legal right to the possession of the corpse of her son in the condition it was in at the instant of death for the purpose of preserving and burying the remains, and without her consent, or statutory authority therefor, no one had a right to deprive her of such possession, or to dissect or otherwise mutilate the body of her son, and the law gives her a cause of action to

recover damages, which are measured by the injury to her feelings, caused by the invasion or violation of this right. Foley v. Phelps, 1 App. Div. 551, 37 N. Y. Supp. 471; Jackson v. Savage, 109 App. Div. 556, 96 N. Y. Supp. 366. It is contended on the part of the respondent that as coroner's physician his acts were authorized and justified. Section 305 of the Penal Code, then in force, authorized the decedent to direct the manner in which his body should be disposed of after his death, but there is no proof, and it is not claimed, that he gave any direction which authorized the acts of the defendant of which the plaintiff complains. Section 306 of the Penal Code then in force provided that every dead body of a human being within the state should be decently buried within a reasonable time after death, except in the cases in which a right to dissect it is expressly conferred by law. Section 308 of the Penal Code authorized the dissection of the dead body of a human being in four instances only, which, so far as here material, may be briefly stated as follows: (1) In cases prescribed by special statutes; (2) to the extent authorized by a coroner for the purpose of an inquest which he is duly holding according to law; (3) for the purpose of ascertaining the cause of death, when and so far as authorized by the husband, wife, or next of kin charged by law with the duty of burial; and (4) by, or by the direction of, the district attorney, as authorized in the fourth subdivision of the section. Section 309 of the Penal Code declared it to be a misdemeanor to dissect the dead body of a human being without authority of law or pursuant to permission given by him. Section 310 of the Penal Code provided· that in all cases in which a dissection has been made the provision, to which reference has been made, requiring the burial of a dead body, and other provisions of the Penal Code punishing interference with and injuries to it, "apply equally to the remains of the body dissected, as soon as the lawful purposes of such dissection have been accomplished." It is quite plain, I think, that these statutory provisions conferred no authority on the coroner's physician to dissect the remains in the absence of a direction by the coroner, which has not been shown to have been given; and, even if the autopsy had been authorized by the coroner, that did not, on the facts here presented, justify the removal and detention of any of the organs of the decedent.

It is contended, however, on the part of the respondent that he is protected by certain local statutes. Section 2 of chapter 833 of the Laws of 1873 authorized a coroner "when necessary, to employ not more than two competent surgeons to make post mortem examinations and dissections, and to testify to the same, the compensation therefor to be a county charge." Section 1773 of the consolidation act (chapter 410, Laws 1882), which it is claimed, and we have assumed without examination, because we find nothing in it to sustain the claim made thereunder by the respondent, was still in force, provided as follows:

"When in the city of New York any person shall die from criminal violence or by a casualty, or suddenly, when in apparent health,. or when unattended by a physician, or in prison, or in a suspicious or unusual manner, the coroner shall subpœna one of the coroner's physicians,. who shall view the body of such deceased person externally, or make an autopsy thereon as may be

required. It shall be the duty of the physician to whom such subpœna is so issued, to make the inspection and autopsy required and to give evidence in relation thereto at the coroner's inquest. The testimony of such physician and that of any other witnesses that the coroner shall find necessary shall constitute an inquest."

It would seem that there was no ground even for doubting that the decedent's death was due to the fall from the seat of the coach upon the pavement, and that viewing the remains without an autopsy should have sufficed. Assuming, however, that the coroner, if acting in good faith, would have had a right under the provisions of this section of the consolidation act to hold an inquest to determine the cause of death as provided in the statute, still there is no evidence here that the coroner subpœnaed the defendant for the purpose of viewing the body of the decedent, or of making the autopsy, and there is no evidence of any direction by or authority from the coroner to dissect the body to any extent whatever. Doubtless, if the defendant made the autopsy by the direction of the coroner, that would justify the dissection of the body (Statutes, supra; People v. Fitzgerald, 105 N. Y. 146, 152, 11 N. E. 378, 59 Am. Rep. 483; Crisfield v. Perine, 15 Hun, 202, affirmed 81 N. Y. 622), but it would not, in the absence of further directions from the coroner or district attorney, or other evidence, warrant the removal or detention of any part of the body.

It is contended that, since it was unlawful and would constitute a misdemeanor for the defendant to dissect the body without authority from the coroner, such authority must be presumed. It appears, however, that the defendant did not claim to the plaintiff's daughter, or to Coroner Harburger, that he was authorized to dissect the body by any coroner, and therefore there can be no presumption that he was so authorized, even if such presumption would otherwise prevail, as to which we deem it unnecessary to express an opinion.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

CLARKE, MILLER, and DOWLING, JJ., concur. INGRA-HAM, P. J., concurs in result.