■ ESTATE OF MALCOLM E. LAMORE, Also Known as MICHAEL LAMORE and MACK LAMORE, et al., Appellants, v JOAN SUMNER et al., Respondents. [848 NYS2d 754]—

Rose, J. Appeals from an order and an amended order of the Supreme Court (Krogmann, J.), entered September 21, 2006 in Washington County, which, among other things, granted certain defendants' cross motions for summary judgment dismissing the complaint.

Decedent's sister, defendant Joan Sumner, handled all aspects of his burial with the acquiescence of his son, plaintiff Daniel E. LaMore, who resided some distance away in New Hampshire. Sumner made the arrangements through defendant Jay T. Jillson and defendant Jillson Funeral Home, Inc. (hereinafter collectively referred to as Jillson). When she was informed that there was no room in the LaMore family burial plot at the cemetery operated by defendant North Granville Cemetery Association (hereinafter Granville) and, thus, she could not carry out her plan to bury decedent with his family Sumner purchased another plot in the Granville cemetery. Decedent was interred in the alternate plot and LaMore attended the funeral services. Some months later, Sumner learned that there had been room in the family plot all along, and she asked Jillson and Granville to rectify their error. Decedent's entire burial vault was then disinterred and reinterred in the family plot. Learning of this change only after it occurred, the estate, by LaMore, and LaMore individually commenced this action against defendants alleging that the disinterment had violated their rights. They sought money damages for LaMore's emotional distress and permission to remove decedent's remains to a cemetery in New Hampshire at defendants' expense. On cross motions for summary judgment, Supreme Court permitted plaintiffs to move the remains to New Hampshire at their own expense and otherwise dismissed the complaint.

On their appeal, plaintiffs acknowledge that we do not recognize a cause of action for wrongful disinterment (*see Orlin v*

*Torf*, 126 AD2d 252, 255 [1987], *lv denied* 70 NY2d 605 [1987]). They allege instead that defendants have violated their common-law right of sepulcher (*see generally Emeagwali v Brooklyn Hosp. Ctr.*, 11 Misc 3d 1055[A], 2006 NY Slip Op 50221[U], *4 [2006]). Such a cause of action, however, seeks to assure the right of the decedent's next of kin to have immediate possession of the body for preservation and burial, and it affords damages only when there has been interference with that right (*see Darcy v Presbyterian Hosp. in City of N.Y.*, 202 NY 259, 262 [1911]; *Plunkett v NYU Downtown Hosp.*, 21 AD3d 1022, 1022-1023 [2005]; *Nesbit v Turner*, 15 AD3d 552, 553 [2005]; *Booth v Huff*, 273 AD2d 576, 577 [2000]; *see also Augeri v Roman Catholic Diocese of Brooklyn*, 225 AD2d 1105, 1106 [1996]). There was no violation of this right here because LaMore acceded to decedent's initial burial as arranged by Sumner and did not seek possession of the remains until much later.

Plaintiffs also allege that Granville breached the statutory duty owed to them by failing to obtain LaMore's consent to disinterment as provided in N-PCL 1510 (e). Again, however, they fail to state a cognizable claim for money damages. LaMore's claim of negligent infliction of emotional distress " 'requires a showing that defendants' conduct unreasonably endangered plaintiffs' physical safety or, as exceptions to this rule, that untruthful information regarding death was transmitted or that a corpse was negligently mishandled' " (*Hart v Child's Nursing Home Co.*, 298 AD2d 721, 723 [2002], quoting *Dobisky v Rand*, 248 AD2d 903, 905 [1998]). There is no allegation here that decedent's body, which remained encased in the burial vault, was mishandled in any way by anyone during disinterment or reinterment. Nor does a search of this record reveal any special circumstances that might reasonably be characterized as an act of desecration or otherwise give rise to "an especial likelihood of genuine and serious mental distress" (*Johnson v State of New York*, 37 NY2d 378, 382 [1975]; *cf. Gostkowski v Roman Catholic Church*, 262 NY 320, 323 [1933]; *Massaro v O'Shea Funeral Home*, 292 AD2d 349, 351 [2002]).

To the extent that Granville's failure to obtain LaMore's consent may have deprived him of an opportunity to exercise control over decedent's remains, his right to do so was adequately vindicated by the court order permitting him to move the remains to New Hampshire. Inasmuch as plaintiffs never sought to simply have decedent's remains returned to the alternate plot, they failed to show any causal connection between the complained of disinterment and the expense of later moving the remains to a different cemetery in another state.

Thus, that expense is not an item of damages recoverable for Granville's failure to obtain consent.

We also find no merit in plaintiffs' contention that Jillson and Granville violated Public Health Law §§ 4216, 4218 and 4144. As is relevant here, sections 4216 and 4218 prohibit the removal of a body from its place of interment "from malice or wantonness." Given that the purpose of the disinterment here was to rectify an error and relocate decedent's remains to the family plot, the record shows no malice or wantonness on the part of anyone. Section 4144 is also inapplicable because it requires a permit prior to burial only in the first instance (see Public Health Law § 4144 [1]) and, again, plaintiffs do not challenge decedent's initial interment.

Cardona, P.J., Mugglin, Lahtinen and Kane, JJ., concur. Ordered that the order and amended order are affirmed, with one bill of costs.