OPINION OF THE COURT
Pigott, J.
At issue on this appeal is whether a medical examiner has a mandated obligation — pursuant to the Public Health Law and a next of kin’s common-law right to immediate possession of a decedent’s body for preservation and burial (commonly known as the “right of sepulcher”) — to notify a decedent’s next of kin that, although a decedent’s body is available for burial, one or more organs and/or tissues have been retained for further examination and testing as part of an authorized autopsy. We hold that no such obligation exists.
L
The tragic and unfortunate events from which this litigation originated occurred on January 9, 2005, when the decedent Jesse Shipley, a 17-year-old high school student, was killed in an automobile accident in Staten Island, New York. Dr. Stephen de Roux, a forensic pathologist and a medical examiner employed by the Office of the New York City Medical Examiner, conducted an autopsy of decedent the day following the accident at the Richmond County Mortuary.
The medical examiner spoke with decedent’s father, plaintiff Andre Shipley, prior to conducting the autopsy. He apprised Mr. Shipley of his intentions and, even though it was not required, obtained Mr. Shipley’s consent to perform the autopsy. Mr. Shipley asked the medical examiner to make decedent’s body as “presentable as possible” for the funeral. During the autopsy, the medical examiner removed, among *649 other organs, decedent’s brain and “fixed” it in formalin[1] in a jar separate from tissue samples he had taken of other organs.[2] The jar was labeled with decedent’s name and the date of the autopsy, and was placed in a cabinet in the autopsy room. The medical examiner’s routine practice was to wait until the cabinet had accumulated at least six specimens before contacting a neuropathologist, Dr. Hernando Mena, who would at that point travel to Staten Island in order to conduct a neuropathologic examination of the brain specimens.
Once decedent’s autopsy had been conducted, funeral home personnel retrieved decedent’s body from the mortuary and a funeral was held on January 13, 2005.
In March 2005, forensic science students from decedent’s high school took a field trip to the Richmond County Mortuary. During a tour of the autopsy room, some of the students observed the specimen jar holding decedent’s brain. This information was relayed to decedent’s sister, Shannon, who told her parents. On March 9, 2005, Dr. Mena examined the specimen and concluded that decedent had died of multiple blunt trauma to the head.
IL
The Shipleys[3] commenced this action against the City of New York and the Office of the New York City Medical Examiner (collectively, the City), alleging negligent infliction of emotional distress resulting from the display and alleged mishandling and withholding of their son’s brain. Following discovery, the *650 City moved for summary judgment dismissing the complaint for failure to state a cause of action, arguing that, based on the complaint’s language, the Shipleys were asserting that the City interfered with the Shipleys’ common-law right of sepulcher. The City argued that the medical examiner had the authority to conduct the autopsy, and had received the consent of Mr. Shipley to do so in any event, and that the removal and retention of the brain by the medical examiner was authorized by law. The Shipleys countered that even assuming the medical examiner had the authority to conduct the autopsy, he had “mishandled” decedent’s organs and “unlawfully interfered” with the Shipleys’ right to decedent’s “whole body.”
Supreme Court denied the City’s motion, holding that the City failed to establish as a matter of law that decedent’s brain was lawfully retained for scientific purposes and that a question of fact existed as to whether the City interfered with the Shipleys’ right of sepulcher when it failed to apprise the Shipleys before their son’s burial that his brain had been removed and was in the possession of the medical examiner (2009 NY Slip Op 33249[U] [Sup Ct, Richmond County 2009]).
The Appellate Division modified by deleting the provision of Supreme Court’s order denying the City’s motion for summary judgment seeking dismissal of so much of plaintiffs’ first cause of action as was to recover damages for unauthorized withholding, mutilation, and display of decedent’s body parts, and granting that branch of the motion, and, as so modified, affirmed (80 AD3d 171, 180 [2d Dept 2010]).
As relevant here, the Appellate Division held that the autopsy of decedent was authorized, even if Mr. Shipley had not consented to it, because the medical examiner had the statutory authority to exercise his discretion in performing the autopsy and removing and retaining organs for further examination and testing (see id. at 175-176). Nonetheless, according to the Appellate Division, the medical examiner had “the mandated obligation, pursuant to Public Health Law § 4215 (1) and the next of kin’s common-law right of sepulcher, to turn over the decedent’s remains to the next of kin for preservation and proper burial once the legitimate purposes for the retention of those remains [had] been fulfilled” (id. at 178). The Court deemed this obligation to be not only “ministerial in nature” but also one that was “clearly for the benefit of, and . . . owed directly to, the next of kin,” and this obligation could have been met with “the simple act of notifying the next of kin *651 that, while the body [was] available for burial, one or more organs [had] been removed for further examination” {id.). In the Appellate Division’s view, such notification would have given the Shipleys an opportunity
“[to] make an informed decision regarding whether to bury the body promptly without the missing organs and then either accept the organs at a later date or authorize the medical examiner to dispose of them, or alternatively, to wait until such time as the organs and body can be returned to them together ... for burial or other appropriate disposition by the next of kin” {id.).
The case thereafter proceeded to trial on the sole issue of whether the medical examiner returned decedent’s body to the Shipleys without informing them that the medical examiner had retained decedent’s brain (and therefore violated the Shipleys’ right of sepulcher).[4] The City called one witness, Dr. de Roux, who testified that the brain was the only organ that was removed for neuropathologic examination by Dr. Mena, but that he had obtained small samples of other organs and placed them in formalin. He retained the latter organ samples so that they could be microscopically examined at a later date in the event a question arose as to decedent’s cause of death.
At the conclusion of the defense’s case, the Shipleys moved for a directed verdict on the issue of liability, relying on the medical examiner’s testimony that the Shipleys were never informed that the medical examiner had retained decedent’s brain and other organs. The City also moved for a directed verdict, arguing, among other things, that there was insufficient evidence to establish a special relationship with regard to the right of sepulcher claim. Supreme Court granted the Shipleys’ motion for a directed verdict as to liability.
Following a trial on damages, resulting in a verdict of $1 million for the Shipleys, the City’s motion to set aside the verdict was denied. The Appellate Division affirmed the judgment entered upon the Shipleys’ stipulation to a reduced award of damages (105 AD3d 936, 936-937 [2d Dept 2013]). The Shipleys consented to the reduced award. This Court granted the *652 City leave to appeal (22 NY3d 857 [2013]), bringing up for review the Appellate Division’s order denying, in part, the City’s motion for summary judgment.
III.
A medical examiner’s authority to conduct autopsies is largely statutory. Title II of article 42 of the Public Health Law identifies those individuals who possess the legal authority to perform autopsy and dissection (see Public Health Law §§ 4209, 4210), and delineates criminal penalties for unlawful dissection (see Public Health Law § 4210-a) and civil penalties for unauthorized autopsies conducted in good faith (see Public Health Law § 4210-b). The Public Health Law also contains a religious exemption that prohibits a dissection or autopsy “in the absence of a compelling public necessity” where a “surviving relative or friend of the deceased” objects on the ground that the procedure is “contrary to the religious belief of the decedent” (Public Health Law § 4210-c [l]).[5]
Public Health Law § 4210 provides that a county medical examiner, or one acting at his or her direction, has the right to dissect the body of a deceased person (see Public Health Law § 4210 [2] [c]). Additionally, New York City Charter § 557 (f) (1) states, as relevant here, that the Chief Medical Examiner possesses “such powers and duties as may be provided by law in respect to [the] bodies of person[s] dying from criminal violence, by accident, by suicide, suddenly when in apparent health, when unattended by a physician, in a correctional facility or in any suspicious or unusual manner” (emphasis supplied). Medical examiners possess the discretionary authority to determine when an autopsy is necessary, and, when indicated, “the autopsy shall include toxicologic, histologic, microbiologic and serologic examinations” (Administrative Code of City of NY § 17-203). The statutory authority of a medical examiner to conduct dissection and autopsy is, therefore, fairly broad, as is the right of the medical examiner to remove and retain an organ, like the brain, for further examination and testing (see NY City Charter § 557 [f] [3] [permitting the Chief Medical Examiner to conduct “forensic and related testing and analysis” and perform “pathology, histology and toxicology testing and analysis” along with “determining the cause or manner of injuries and/or death”]).
*653 The medical examiner clearly had the authority to conduct the autopsy in this instance. As a public employee engaging in a governmental function, his determination to conduct the autopsy and his decision to remove the brain and other organs for further study constituted “ ‘discretionary acts/ ” meaning that his conduct involved the “ ‘exercise of reasoned judgment’ ” that “ ‘may not result in the [City’s] liability even [if] the conduct [was] negligent’ ” (Valdez v City of New York, 18 NY3d 69, 76 [2011], quoting Lauer v City of New York, 95 NY2d 95, 99 [2000]). The pertinent issue in this appeal, however, is whether, in the exercise of his statutory duties and obligations, the medical examiner nevertheless had a common-law and statutory duty to notify the Shipleys of his retention of certain organs and tissues, and therefore violated the Shipleys’ common-law right of sepulcher and the Public Health Law when he failed to do so.
IV.
The common-law right of sepulcher affords the deceased’s next of kin an “absolute right to the immediate possession of a decedent’s body for preservation and burial. . . , and damages may be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent’s body” (Mack v Brown, 82 AD3d 133, 137 [2d Dept 2011] [citations omitted]; see Darcy v Presbyterian Hosp. in City of N.Y., 202 NY 259, 263 [1911], rearg denied 203 NY 547 [1911] [recognizing a cause of action for interference and prevention of next of kin’s right to receive the body of the deceased]; Shepherd v Whitestar Dev. Corp., 113 AD3d 1078, 1080 [4th Dept 2014]; Melfi v Mount Sinai Hosp., 64 AD3d 26, 31 [1st Dept 2009]; Estate of LaMore v Sumner, 46 AD3d 1262, 1264 [3d Dept 2007]). The right itself “is less a quasi-property right and more the legal right of the surviving next of kin to find ‘solace and comfort’ in the ritual of burial” (Melfi, 64 AD3d at 32). Damages are limited to the emotional suffering, mental anguish and psychological injuries and physical consequences thereof experienced by the next of kin as a result of the interference with the right of sepulcher (see id. at 32, 36-37; see also PJI 3:6.1).
Decedent’s body was returned to the Shipleys once the authorized autopsy had been conducted. The body was thus made available to the Shipleys for preservation and burial. Because *654 the right of sepulcher is premised on the next of kin’s right to possess the body for preservation and burial (or other proper disposition), and is geared toward affording the next of kin solace and comfort in the ritual of burying or otherwise properly disposing of the body, it is the act of depriving the next of kin of the body, and not the deprivation of organ or tissue samples within the body, that constitutes a violation of the right of sepulcher.[6]
To be sure, a cause of action for violation of the right of sepulcher will lie where there has been an “unauthorized autopsy” (Darcy, 202 NY at 265), which the courts of this state consider an “unlawful mutilation” (Grawunder v Beth Israel Hosp. Assn., 242 App Div 56, 60-61 [2d Dept 1934], affd 266 NY 605, 606 [1935]). However, the autopsy in this instance, as conceded by the Shipleys, was plainly authorized. Indeed, there is nothing in our common-law jurisprudence that mandated that the medical examiner do anything more than produce the decedent’s body for a proper disposition. Thus, the only way there could be a violation of the Shipleys’ right of sepulcher would be if the common law directed the medical examiner to produce not only decedent’s body for proper disposition once the authorized autopsy was conducted, but the organs and tissue samples as well.
The Shipleys claim that, notwithstanding the medical examiner’s statutory authorization to conduct autopsies and retain organs for examination and testing, both the common- *655 law right of sepulcher and Public Health Law § 4215 (1) require that the brain and tissue samples removed during the autopsy be returned to a decedent’s next of kin and only they, the next of kin, may direct the manner of their disposition. Public Health Law § 4215 (1) states that
“[i]n all cases in which a dissection has been made, the provisions of this article [42, entitled ‘Cadavers’], requiring the burial or other lawful disposition of a body of a deceased person, and the provisions of law providing for the punishment of interference with or injuries to it, apply equally to the remains of the body after dissection as soon as the lawful purposes of such dissection have been accomplished” (emphasis supplied).
The Appellate Division held that the medical examiner had a “mandated obligation” and “ministerial” duty pursuant to the common-law right of sepulcher and Public Health Law § 4215 (1) to turn over to the Shipleys the organs that he removed from decedent, once he had completed the dissection and “the legitimate purposes for the retention of those remains [had] been fulfilled” (80 AD3d at 178). This was error that broadly expanded the medical examiner’s obligations under common law and statute.
We have explained that “ministerial acts — meaning conduct requiring adherence to a governing rule, with a compulsory result — may subject the municipal employer to liability for negligence” (Lauer, 95 NY2d at 99, citing Tango v Tulevech, 61 NY2d 34, 40-41 [1983] [liability will be imposed if the ministerial action is “otherwise tortious and not justifiable pursuant to statutory command” (emphasis supplied)]). Indeed, section 4215 (1) contains a “governing rule” or “statutory command” to the extent that the medical examiner, once he or she is finished with the authorized dissection, must turn the “remains of the body after dissection” over for “burial or other lawful disposition.” The issue thus boils down to whether the statutory language “remains of the body” refers to what is left of the body after the autopsy has been conducted (as the City argues), or requires the medical examiner to turn over not only the body itself but also any organs or tissue samples that have been removed during the autopsy (as the Shipleys contend).
That there is ambiguity concerning the statutory language “remains of the body,” which is not a defined term, necessarily *656 means that although the legislature has provided the medical examiner with a “governing rule” and “statutory command” to turn over a decedent’s body for burial or proper disposition, it has not issued such a rule or command directing the medical examiner to turn over the organs and tissue samples recovered as a result of a dissection or autopsy.[7] Had the legislature so intended, rather than utilizing the phrase “remains of the body,” it could have utilized the specific words “tissue, organ or part thereof” as it has done in other sections of article 42 of the Public Health Law (see Public Health Law §§ 4216 [making it a class D felony for a person to remove from a dead body “any tissue, organ or part thereof (emphasis supplied)], 4217 [making it a misdemeanor for a person to purchase or receive “any tissue, organ, or part” of a dead body (emphasis supplied)], 4218 [making it a class D felony for a person to open a grave or other place of interment “with intent to remove the body, or any tissue, organ or part thereof, for the purpose of selling it or demanding money for the same, or for the purpose of dissection” (emphasis supplied)]).
The legislature did not include such language in section 4215 (1). If anything, the Public Health Law’s designation of “tissue, organs, and body parts . . ., [and] body fluids that are removed during . . . autopsy” as “regulated medical waste” (Public Health Law § 1389-aa [1] [b]), which must be stored, contained and treated or disposed of in a particular manner (see Public *657 Health Law §§ 1389-cc, 1389-dd), only underscores that the medical examiner did not have a ministerial duty to turn over such organs and tissue samples as a matter of course. Absent any specific legislative command that he do so, it was within the medical examiner’s discretion to determine (a) what organs and tissue samples to retain; and (b) whether to apprise the Shipleys that decedent’s body had been returned without the specimens.
The enactment of article 42 of the Public Health Law constituted legislative acknowledgment that certain governmental and nongovernmental actors, such as coroners, medical examiners, and hospital and mortuary personnel, may, in certain circumstances, need to conduct dissections for a myriad of reasons.[8] In such situations, the “immediate” possession of the deceased’s body by the next of kin is necessarily delayed. This is evidenced by Public Health Law § 4200’s directive that “every body of a deceased person, within this state, shall be decently buried or incinerated within a reasonable time after death,” unless “a right to dissect it is expressly conferred by law” (Public Health Law § 4200 [1] [emphasis supplied]). And, of course, the right of certain individuals to dissect and conduct autopsies is “expressly conferred by law.”
When the legislature enacted statutes granting medical examiners (and others) the authority to conduct autopsies and dissections (see Public Health Law §§ 4209, 4210), it acknowledged through the enactment of section 4215 (1) that there would be situations where the decedent’s body may not be buried or incinerated within a reasonable time after the decedent’s death, as per section 4200 (l)’s directive. Thus, section 4215 strikes a balance permitting the lawful dissection of a body, while concomitantly ensuring that once the lawful purposes have been accomplished the body will be buried, incinerated or properly disposed of as per section 4200 (1), and that the penalties for the interference with or injuries to the body would “apply equally to the remains of the body after dissection.”
When section 4200 (1) and section 4215 (1) are read in tandem, there is no language that would cause a medical examiner to divine from section 4215 (1) that he or she is required to return not only decedent’s body, but the organs and *658 tissue samples that the medical examiner is legally permitted to remove. Similarly, our right of sepulcher jurisprudence does not mandate that a medical examiner return decedent’s organs and tissue samples. Thus, because there was no governing rule or statutory command requiring a medical examiner to turn over organs and tissue samples, it could not be said that he or she has a ministerial duty to do so. At most, a medical examiner’s determination to return only the body without notice that organs and tissue samples are being retained is discretionary, and, therefore, no tort liability can be imposed for either the violation of the common-law right of sepulcher or Public Health Law § 4215 (1). Once a medical examiner returns a decedent’s body sans the organs and tissue samples, the medical examiner for all intents and purposes has complied with the ministerial duty under section 4215 (1). Absent a duty to turn over organs and tissue samples, it cannot be said that the medical examiner has a legal duty to inform the next of kin that organs and tissue samples have been retained.
The events that precipitated this litigation were tragic and unfortunate. But, absent any specific rule requiring the medical examiner to turn over the removed organs and tissue samples and/or notify the Shipleys that the brain and such tissue samples had been retained for further examination and testing, liability cannot be imposed on the City for failing to abide by an alleged “ministerial” duty when there was no specific directive for a medical examiner to follow other than the mandatory obligation to return the body once finished with the lawful objectives of the examination.
V.
The issues raised on this appeal are of a sensitive nature. The Appellate Division attempted to craft a notification rule that it claimed would be “hardly onerous” for the medical examiner to follow, i.e., the “simple act of notifying the next of kin that, while the body is available for burial, one or more organs have been removed for further examination” and that they may be accepted at a later date for burial (80 AD3d at 178). But the claimed ease of that rule’s application is irrelevant in the context of these matters because practical and policy considerations exist beyond merely providing next of kin with notification.
The Appellate Division’s notification rule — which the Office of the New York City Medical Examiner has followed (not out *659 of its belief that it is appropriate but rather because it felt compelled by the Appellate Division to do so) — presumes that all next of kin actually want to be notified. The Appellate Division’s notification rule raises more questions than it answers, such as what type of notice is required; what the time period is for when such notice should be given; which organs, tissues and specimens must be turned over and how; and how long should such organs, tissues and specimens be retained while the next of kin determine whether they wish to bury the body with those items.
Other jurisdictions have impliedly recognized the inherent problem with judicially-crafted notice rules and, after the commencement of litigation by next of kin asserting that they possessed a property interest in their decedents’ organs (see Waeschle v Dragovic, 576 F3d 539, 545 [6th Cir 2009], cert denied 559 US 1037 [2010]; Albrecht v Treon, 118 Ohio St 3d 348, 350, 889 NE2d 120, 122 [2008]), enacted statutes that provide legislative guidance on a medical examiner’s obligations concerning the return of a decedent’s organs and tissues after a lawful autopsy has been conducted (see Mich Comp Laws Ann § 52.205 [6] [requiring the medical examiner to “promptly deliver or return the body or any portion of the body to relatives or representatives of the decedent,” but allowing the medical examiner to “retain any portion of the body” that the medical examiner considers necessary; setting forth the notification and record keeping procedures the medical examiner must follow “if a portion of the body retained is an entire organ or limb of the decedent,” and also calling for the disposition of the unwanted organs or limbs as “medical waste”]; Ohio Rev Code Ann § 313.123 [B] [l]-[3][9] [defining “retained tissues, organs, blood, other bodily fluids, gases, or any other specimens from an autopsy” as “medical waste” and requiring their disposal in accordance with state and federal law, but providing for a religious exemption that prohibits the coroner from removing those specimens unless such removal “is a compelling public necessity,” and, in such case, the coroner must “return the specimens, as soon as is practicable, to the person who has the *660 right to the disposition of the body,” unless the specimen is a DNA specimen]).
VL
There is simply no legal directive that requires a medical examiner to return organs or tissue samples derived from a lawful autopsy and retained by the medical examiner after such an autopsy. The medical examiner’s obligations under both the common-law right of sepulcher and Public Health Law § 4215 (1) are fulfilled upon returning the deceased’s body to the next of kin after a lawful autopsy has been conducted. If the legislature believes that next of kin are entitled to notification that organs, tissues and other specimens have been removed from the body, and that they are also entitled to their return prior to burial of the body or other disposition, it should enact legislation delineating the medical examiner’s obligations in that regard, as it is the legislature that is in the best position to examine the issue and craft legislation that will consider the rights of families and next of kin while concomitantly taking into account the medical examiner’s statutory obligations to conduct autopsies.
Accordingly, the order insofar as appealed from should be reversed, with costs, and the complaint dismissed in its entirety.

. In the amicus curiae brief submitted to this Court, the National Association of Medical Examiners explains that fixation in formalin fluid for two weeks allows a medical examiner to properly analyze brain tissues. The fixation process, along with the subsequent neuropathological examination, routinely extends beyond the body being released to a funeral home after autopsy.

. The medical examiner explained at his deposition that he removed blood, bile, gastric contents, liver and vitreous humor from decedent’s body and sent them to the toxicology lab. He also took samples from certain organs and placed the pieces in a histology stock jar. This ensured that the medical examiner could microscopically examine those tissues after the body’s burial. The medical examiner typically retains these samples for approximately three years. The organs and tissues not retained by the medical examiner are typically placed in a red “biohazard” bag, which is then placed inside the body before the incision is sewn up.

. Although Shannon is listed as a plaintiff on the complaint, she was dismissed from the action on the ground of lack of standing. Therefore, use of the name “Shipleys” will refer to plaintiffs Andre and Korisha Shipley.

. The Appellate Division held that the Shipleys failed to raise a triable issue of fact in response to the City’s prima facie showing that decedent’s brain was not mishandled or put on “public display,” and precluded the Shipleys from pursuing those theories of liability at trial (80 AD3d at 179).

. The Shipleys did not raise a religious objection to the dissection or autopsy.

. The dissent’s reliance on Hendriksen v Roosevelt Hosp. (297 F Supp 1142 [SD NY 1969]) for the proposition that the deceased’s next of kin must first consent to a medical examiner’s retention of parts of the body is misplaced. In Hendriksen, the defendant hospital and its physician did not possess the legal authority to conduct an autopsy in the first instance, and, therefore, they obtained written consent from the decedent’s next of kin. That consent provided that “ ‘permission is hereby granted for a complete autopsy to include examination (by scalp incision) of the central nervous system,’ ” which the plaintiff executed for the purpose of ascertaining the cause of death (id. at 1143-1144). The only issue in Hendriksen was whether the defendants’ retention of decedent’s internal organs and viscera exceeded the scope of the written consent. Although the Hendriksen court relied on Hassard v Lehane (143 App Div 424 [1st Dept 1911]) for the (erroneous) proposition Hassard “established” that consent was necessary for “the retention of parts of the body’ (Hendriksen, 297 F Supp at 1144), a closer examination reveals that Hassard was nothing more than a wrongful autopsy case (see Hassard, 143 App Div at 425-426). As such, the Hassard court’s statement — unsupported by any authority — that “even if the autopsy had been authorized . . . , that did not. . . justify the removal and detention of any of the organs of the decedent” (id. at 426) is plainly dicta.

. The dissent asserts that Public Health Law § 4215 (2)’s statement that, where an autopsy or dissection has been made on an “unclaimed body, . . . the persons having possession of the body may, in their discretion, cause it to be either buried or cremated, or may retain parts of such body for scientific purposes,” necessarily means that “parts of such body” is a subset of “remains of the body” such that “remains of the body” must mean more than the cadaver itself (dissenting op at 667). Section 4215 (2), however, provides more interpretive evidence that, had the legislature intended for “remains of the body” to include something more than the cadaver itself, it knew how to do so. Indeed, the Public Health Law provides guidance concerning the delivery and disposal of unclaimed bodies (see Public Health Law §§ 4211 [Cadavers; unclaimed; delivery to schools for study], 4212 [Cadavers; unclaimed; delivery to schools; procedure], 4214 [2] [“In the case of an unclaimed body of a deceased person, the medical colleges, schools, institutes and universities shall have a priority claim to the said body, for the purposes of medical, anatomical or surgical science and study as provided in this article”]; 4215 [2]). Plainly, the use of the language “parts of such body for scientific purposes” in section 4215 (2) is intended to protect certain institutions from criminal penalties for unlawful autopsy and dissection. It does not follow, as the dissent argues, that the use of the term “parts of such body” is meant as a limitation on a medical examiner’s authority to retain organs and tissues.

. For instance, autopsies and hygienic maintenance of the deceased’s body in preparation for disposition.

. These medical waste and religious exemption provisions are somewhat similar to ours (see Public Health Law §§ 1389-aa [1] [b] [medical waste]; 4210-c [1] [“no dissection or autopsy shall be performed over the objection of a surviving relative or friend of the deceased that such procedure is contrary to the religious belief of the decedent,” unless compelling public necessity can be demonstrated]).