■ ZHUANGZI LI, as Administrator of the Estate of LINRU FAN, Deceased, et al., Respondents, v NEW YORK HOSPITAL MEDICAL CENTER OF QUEENS, Appellant, et al., Defendant. [48 NYS3d 225]—

In an action, inter alia, to recover damages for violation of the common-law right of sepulcher, negligent infliction of emotional distress, and fraud, the defendant New York Hospital Medical Center of Queens appeals, as limited by its brief, from so much of an order of the Supreme Court, Queens County (O'Donoghue, J.), dated December 12, 2012, as granted the plaintiffs' motion for summary judgment on the issue of liability on the first cause of action insofar as asserted against it and denied that branch of its cross motion which was for summary judgment dismissing the first cause of action insofar as asserted against it. Justice Rivera has been substituted for former Justice Skelos (*see* 22 NYCRR 670.1 [c]).

Ordered that the order is modified, on the law, (1) by deleting the provision thereof granting the plaintiffs' motion for summary judgment on the issue of liability on the first cause of action insofar as asserted against the appellant, and substituting therefor a provision denying the motion, and (2) by deleting the provision thereof denying that branch of the appellant's cross motion which was for summary judgment dismissing so much of the first cause of action, insofar as asserted against it, as alleged failure to timely perform an autopsy, and substituting therefor a provision granting that branch of the cross motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

Linru Fan and Zhuang Zi Li (hereinafter together the plaintiffs) were the parents of a fetus which genetic testing indicated was a female fetus with a genetic defect incompatible

with life. Linru Fan elected to terminate the pregnancy. The procedure was performed at the defendant New York Hospital Medical Center of Queens (hereinafter the Hospital). On the day of the procedure, the Hospital presented Linru Fan with a form entitled "Consent for Burial Form," which provided: "I hereby request and authorize that New York Hospital Queens bury, or arrange for the burial of the baby," and gave her the option of designating either a private undertaker, "the Department of Hospitals, New York City," or the St. Vincent de Paul Society to perform the burial. Linru Fan selected the option of a burial by "the Department of Hospitals, New York City."

After the procedure, a nurse allegedly told the plaintiffs that the fetus was male, contrary to the original determination after genetic testing that the fetus was female. The plaintiffs requested an autopsy to confirm the accuracy of the genetic testing. However, the fetus was misplaced, delaying the autopsy for over two months. Eventually, the fetal remains were found at the bottom of a large bin with limbs and other body parts. Ultimately, the autopsy confirmed that the fetus was, in fact, female. The remains were then given to the plaintiffs, who arranged for their disposal.

The plaintiffs commenced the instant action alleging, inter alia, (1) violation of the common-law right of sepulcher, in that the Hospital mishandled the fetal remains and delayed in performing an autopsy, (2) negligent infliction of emotional distress, and (3) fraud. The plaintiffs moved for summary judgment on the issue of liability against the Hospital on the first cause of action, which alleged violation of the common-law right of sepulcher, in that the appellant mishandled the fetal remains and delayed in performing an autopsy. The Hospital cross-moved for summary judgment dismissing "all claims" against it. The Supreme Court granted the plaintiffs' motion, and denied that branch of the Hospital's cross motion which was for summary judgment dismissing the first cause of action insofar as asserted against it. The Hospital appeals. During the pendency of this appeal, Linru Fan died, and Zhuangzi Li, as administrator of her estate, was substituted for her on this appeal.

The common-law right of sepulcher "gives the next of kin the absolute right to the immediate possession of a decedent's body for preservation and burial, and . . . damages will be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent's body" (*Melfi v Mount Sinai Hosp.*, 64 AD3d 26, 31 [2009]; *see Johnson v State of New York*, 37 NY2d 378, 382 [1975]; *Darcy v Presbyterian Hosp. in*

*City of N.Y.*, 202 NY 259, 262 [1911]; *Henderson v Kingsbrook Jewish Med. Ctr.*, 91 AD3d 720 [2012]). The right of sepulcher applies to stillborn infants (*see Emeagwali v Brooklyn Hosp. Ctr.*, 60 AD3d 891 [2009]). Here, although the plaintiffs relinquished their right to prompt possession of the fetal remains when Linru Fan executed a written consent form authorizing the Hospital to arrange for the burial, the plaintiffs also alleged that the Hospital violated their right to sepulcher by mishandling the fetal remains (*see Massaro v O'Shea Funeral Home*, 292 AD2d 349 [2002]; *see also Gostkowski v Roman Catholic Church*, 262 NY 320 [1933]). However, damages attributable to emotional distress caused by the failure to timely perform an autopsy on the fetus are not recoverable (*see Slaughter v St. Anthony Community Hosp.*, 206 AD2d 513 [1994]).

The Hospital argues that a cause of action to recover damages for mishandling a body only applies to a fetus where the attending physician estimates that the fetus has completed 20 weeks of gestation because, the Hospital contends, a fetus of fewer than 20 weeks of gestation is not a "body" (*see* 10 NYCRR 405.9 [f] [9]). Even assuming that such a cause of action lies only with respect to a fetus that has completed at least 20 weeks of gestation, and that the fetus here had not completed 20 weeks of gestation, under the particular facts of the instant case, the Hospital created a right of sepulcher where one might not otherwise exist by affirmatively representing to the plaintiffs that the fetus would receive a burial. The form provided to them relating to the disposition of the fetal remains indicated that the Hospital would bury or arrange for the burial of the fetus. The plaintiffs testified at their respective depositions that they believed that the fetus would be buried in a cemetery. Since the Hospital created a reasonable expectation that the fetus would receive a burial, it was not free to mishandle the fetal remains (*see Finley v Atlantic Transp. Co., Ltd.*, 220 NY 249 [1917]; *see also Massaro v O'Shea Funeral Home*, 292 AD2d 349 [2002]; *Gostkowski v Roman Catholic Church of Sacred Hearts of Jesus & Mary*, 237 App Div 640 [1933], *affd* 262 NY 320 [1933]). However, questions of fact exist as to whether the Hospital, in fact, acted negligently with respect to its handling of the fetal remains as related to burial.

Since the Supreme Court declined to address that branch of the Hospital's cross motion which was for summary judgment dismissing the third cause of action, which alleged fraud, insofar as asserted against it, the Hospital now asks this Court to search the record and award it summary judgment dismiss-

ing that cause of action insofar as asserted against it. In light of the plaintiffs' representation in their brief that they consider that cause of action "withdrawn," there is no need for a disposition of the merits of that cause of action. The withdrawal can be effected in the Supreme Court in accordance with the plaintiffs' representation.

The parties' remaining contentions either are not properly before this Court, are without merit, or need not be addressed in light of our determination.

Accordingly, the Supreme Court should have denied the plaintiffs' motion for summary judgment on the issue of liability on the first cause of action insofar as asserted against the Hospital, and should have granted that branch of the Hospital's cross motion which was for summary judgment dismissing so much of that cause of action, insofar as asserted against it, as alleged failure to timely perform an autopsy. Hinds-Radix, LaSalle and Brathwaite Nelson, JJ., concur.

Roman, J., concurs in part and dissents in part, and votes to reverse the order insofar as appealed from, on the law, deny the plaintiffs' motion for summary judgment on the issue of liability on the first cause of action insofar as asserted against the defendant New York Hospital Medical Center of Queens, and grant that branch of that defendant's cross motion which was for summary judgment dismissing the first cause of action insofar as asserted against it, with the following memorandum, in which Rivera, J.P., concurs: I respectfully disagree with the majority's determination that Linru Fan's execution of the "Consent for Burial Form" designating "the Department of Hospitals, New York City" to bury, or arrange for the burial of, the fetus "created a right of sepulcher where one might not otherwise exist." Under the circumstances of this case, the plaintiffs relinquished their right to immediate possession of the remains for the purpose of burial, and may not recover damages for violation of the common-law right of sepulcher or negligent infliction of emotional distress. Therefore, I dissent, in part.

"[T]he courts have recognized that the right of sepulcher is less a quasi-property right and more the legal right of the surviving next of kin to find 'solace and comfort' in the ritual of burial" (*Melfi v Mount Sinai Hosp.*, 64 AD3d 26, 32 [2009]; *see Shipley v City of New York*, 25 NY3d 645, 653 [2015]; *Darcy v Presbyterian Hosp. in City of N.Y.*, 202 NY 259, 262-263 [1911]). The right of sepulcher is deeply rooted in many religious traditions, and a claim premised on a violation of that right is designed to compensate the next of kin for the emotional suf-

fering, mental anguish, and psychological injuries which they experience from the interference with their ability to bury or otherwise properly dispose of their decedent (*see Shipley v City of New York*, 25 NY3d at 653-654; *Henderson v Kingsbrook Jewish Med. Ctr.*, 91 AD3d 720, 721 [2012]; *Melfi v Mount Sinai Hosp.*, 64 AD3d at 32). Here, the plaintiff parents certainly experienced great emotional suffering and mental anguish after deciding to terminate the pregnancy when confronted with a diagnosis of trisomy 18, which the defendant physician Xuebin Yin indicated was a chromosomal condition incompatible with life. However, for a right of sepulcher claim to come into existence, "there must be interference with the next of kin's immediate possession of decedent's body," and such interference must have caused the mental anguish, which is generally presumed (*Melfi v Mount Sinai Hosp.*, 64 AD3d at 39).

Applying these principles to the facts of this case, the defendant New York Hospital Medical Center of Queens (hereinafter the Hospital) demonstrated its prima facie entitlement to judgment as a matter of law dismissing so much of the first cause of action as sought to recover damages for violation of the common-law right of sepulcher insofar as asserted against it. The Hospital established that, under the circumstances of this case, the plaintiffs relinquished their right to immediate possession of the fetus for the purpose of burial. In support of its cross motion, the Hospital submitted the "Consent for Burial Form," signed by Linru Fan, which offered three choices to the plaintiffs to arrange for the burial of the remains. If the plaintiffs did not want to relinquish control of the remains to the Hospital, they could have exercised the option for them to personally designate a private undertaker. They also could have arranged for a private burial by choosing the option that permitted them to designate the St. Vincent de Paul Society to arrange for the burial. Instead, Linru Fan elected to have the "the Department of Hospitals, New York City" dispose of the remains, rather than taking immediate possession of the remains herself.

Moreover, along with the burial form, the Hospital's cross motion incorporated by reference Linru Fan's deposition testimony (*see Carlson v Town of Mina*, 31 AD3d 1176, 1177 [2006]), which reflected that she never intended to see or possess the remains following the termination of the pregnancy. At her deposition, Linru Fan specifically testified that at the time she signed the "Consent for Burial Form," she never planned to see the remains again. Although Linru Fan testified that she "really want [ed] to know" where the remains were going to be

buried, at the time of her continued deposition in July 2011, approximately two years after the termination of the pregnancy, she testified that she thought her husband had arranged for the burial of the remains yet she had not visited the burial site.

Furthermore, the Hospital demonstrated its prima facie entitlement to judgment as a matter of law dismissing so much of the first cause of action as alleged that it was negligent "in having misplaced, lost and/or improperly disposed" of the fetus, and in failing to timely perform an autopsy on the remains. A plaintiff may recover damages "for emotional harm to a close relative resulting from negligent mishandling of a corpse" (*Johnson v State of New York*, 37 NY2d 378, 382 [1975]; *see Melfi v Mount Sinai Hosp.*, 64 AD3d at 37; *Massaro v O'Shea Funeral Home*, 292 AD2d 349, 351 [2002]). In the present case, the autopsy and burial were delayed as a result of the misplacement of the remains in the hospital morgue while the remains were supposedly en route to the pathology laboratory. However, since the Hospital demonstrated that the plaintiffs elected not to bury the remains themselves, and in the absence of any indication that the plaintiffs were told that a burial would be performed within a certain time frame, under the particular circumstances of this case, the plaintiffs may not recover for any emotional harm allegedly caused as a result of the delay in the burial (*see Stonecipher v Bossuot-Lundy Funeral Home*, 238 AD2d 946, 946-947 [1997] [the plaintiff could not recover damages for negligent infliction of emotional distress arising out of the failure of the defendant to inform the plaintiff when her father was buried, where the plaintiff did not allege that the defendant promised to inform her of the date of the burial or that the plaintiff requested that the defendant do so]). This is particularly so given Linru Fan's testimony that she never planned to see the remains again.

Moreover, as recognized by the majority, the plaintiffs may not recover damages attributable to the alleged emotional distress caused by the Hospital's failure to timely conduct an autopsy on the fetus (*see Slaughter v St. Anthony Community Hosp.*, 206 AD2d 513, 514 [1994] ["we do not regard the defendant's failure to perform an autopsy on the remains of the stillborn infant as the negligent mishandling of a corpse"]). The plaintiffs also may not recover any damages for their alleged emotional distress attributable to not knowing if the fetus had trisomy 18, and the impact this lack of knowledge allegedly had on their future family planning, since "there may be no recovery for the emotional distress related to the

plaintiffs' alleged inability to plan future pregnancies properly" (*id.* at 514). In any event, the plaintiff Zhuang Zi Li testified at his deposition that after the autopsy at the Hospital, he arranged for testing of the remains with an independent laboratory, which confirmed that the fetus was female with trisomy 18, a diagnosis incompatible with life.

Based on the foregoing, the Hospital established its prima facie entitlement to judgment as a matter of law dismissing the first cause of action insofar as asserted against it. In opposition, the plaintiffs failed to raise a triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

With respect to the issue addressed by the majority of whether the common-law right of sepulcher applies to a fetus of less than a certain age, it bears noting that "New York law has not extended sepulcher rights to fetal remains under [20] weeks of gestational age" (*Nesbeth v St. Luke's Hosp.*, 2014 NY Slip Op 30501[U], *14 [Sup Ct, NY County 2014]; *cf. Janicki v Hospital of St. Raphael*, 46 Conn Supp 204, 744 A2d 963 [Super Ct 1999]). Under the Public Health Law, fetal tissue under 20 weeks of gestational age is treated differently from a deceased person for the purposes of burial and removal permits (*see Nesbeth v St. Luke's Hosp.*, 2014 NY Slip Op 30501[U], *14 [2014]). Public Health Law § 4162 provides, in relevant part, that "[a] permit shall be required for the removal, transportation, burial or other disposition of remains resulting from a fetal death, other than fetal tissue . . . or other products of conception of under twenty weeks uterogestation" (Public Health Law § 4162 [1]).

Additionally, 10 NYCRR 405.9 (f) (9) provides, in relevant part, that "[a] dead body, including a stillborn infant or fetus estimated by an attending physician to have completed 20 weeks of gestation, shall be delivered only to a licensed funeral director or undertaker or his/her agent."

Although courts have applied the common-law right of sepulcher with respect to stillborn infants (*see Emeagwali v Brooklyn Hosp. Ctr.*, 60 AD3d 891, 892 [2009]; *Klumbach v Silver Mount Cemetery Assn.*, 242 App Div 843 [1934]), the term "stillbirth" is defined under the Public Health Law as "the unintended intrauterine death of a fetus that occurs after the clinical estimate of the twentieth week of gestation" (Public Health Law § 4160-a [7]). This statutory definition is consistent with the medical terminology. A stillbirth has been described as the loss of a pregnancy from natural causes after the 20th week (*see* The Merck Manual at 2675 [19th ed 2011]; MedlinePlus, service of U.S. National Library of Medicine, National

Institutes of Health, http://www.nlm.nih.gov/medlineplus/ stillbirth.html [accessed Feb. 8, 2017]), while the loss of a fetus of fewer than 20 weeks gestation has been referred to as a miscarriage (*see* The Merck Manual at 2672 [19th ed 2011]; 4 Attorneys' Dictionary of Medicine and Word Finder at M-231 [2016]; MedlinePlus, service of U.S. National Library of Medicine, National Institutes of Health, http:// www.nlm.nih.gov/ medlineplus/miscarriage.html [accessed Feb. 8, 2017]).

Thus, a review of the case law and legislation in this area reveals that the common-law right of sepulcher does not extend to fetal remains under 20 weeks gestation in New York. Here, however, the Hospital failed to eliminate all triable issues of fact as to the gestational age of the fetus.

Nevertheless, for the reasons discussed above, the Supreme Court should have granted that branch of the Hospital's cross motion which was for summary judgment dismissing the first cause of action insofar as asserted against it, and, for the same reasons, should have denied the plaintiffs' motion for summary judgment on the issue of liability on the first cause of action insofar as asserted against the Hospital.