■ TUWANDA C. MARTIN, as Administratrix of the Estate of JOHN ALVIN MARTIN II, Deceased, et al., Respondents, et al., Plaintiff, v ABILITY BEYOND DISABILITY et al., Appellants. [59 NYS3d 766]——

Appeals from an order of the Supreme Court, Westchester County (William J. Giacomo, J.), dated October 1, 2015. The order, insofar as appealed from, denied those branches of the defendants' separate motions which were for summary judgment dismissing the complaint insofar as asserted against each of them by the plaintiffs Tuwanda C. Martin, as administratrix of the estate of John Alvin Martin II, John Martin, and Emma Martin.

Ordered that the order is reversed insofar as appealed from, on the law, with one bill of costs, and those branches of the defendants' separate motions which were for summary judgment dismissing the complaint insofar as asserted against each of them by the plaintiffs Tuwanda C. Martin, as administratrix of the estate of John Alvin Martin II, John Martin, and Emma Martin are granted.

In 1985, John Alvin Martin II (hereinafter the decedent), then a minor, sustained a traumatic and disabling brain injury after being struck by an automobile. As a result, the decedent spent the remainder of his life receiving round-the-clock care

at various nursing and rehabilitation facilities. The decedent also required the assistance of a legal guardian, the defendant Philip E. Conaty, who was appointed shortly after the decedent's accident and served in that role until the decedent's death.

On November 3, 2012, the decedent died at a rehabilitation facility operated by the defendant Ability Beyond Disability (hereinafter Ability), where he had resided since 1996. Conaty and Ability (hereinafter together the defendants) allege that they did not have any contact information for his family, the family had not spoken with Conaty in over two decades, and the family, by their own admission, maintained only sporadic contact with the decedent over the last 20 or more years of his life. Between November 3 and November 9, 2012, the Ability staff allegedly made efforts to locate the decedent's family in order to notify them of the decedent's death, including calling 411, leaving voicemail messages on two possible phone numbers, and reaching out to the Postal Service and local police in an effort to find out more about a P.O. Box address that was found on an envelope sent to the decedent that contained a birthday card. After these alleged efforts were unsuccessful, the decedent's guardian, Conaty, consented to hold a funeral for the decedent on November 9, 2012.

On November 11, 2012, the decedent's parents, the plaintiffs John Martin and Emma Martin, and the decedent's sister, the plaintiff Tuwanda C. Martin, allegedly learned of the decedent's death for the first time. The decedent's body was subsequently exhumed, and a family burial was held later that month. Thereafter, John Martin, Emma Martin, and Tuwanda C. Martin, both individually and in her capacity as administratrix of the decedent's estate, commenced this action against the defendants alleging, inter alia, a violation of the right of sepulcher. The defendants separately moved for summary judgment dismissing the complaint insofar as asserted against each of them, arguing, among other things, that they made proper arrangements for the decedent's burial because the plaintiffs were not reasonably available to do so. The Supreme Court granted those branches of the defendants' motions which were for summary judgment dismissing the complaint insofar as asserted against each of them by Tuwanda individually, but otherwise denied the motions. The defendants appeal.

"The common-law right of sepulcher affords the deceased's next of kin an 'absolute right to the immediate possession of a decedent's body for preservation and burial . . . , and damages may be awarded against any person who unlawfully interferes

with that right or improperly deals with the decedent's body' " (*Shipley v City of New York*, 25 NY3d 645, 653 [2015], quoting *Mack v Brown*, 82 AD3d 133, 137 [2011]). "The right itself 'is less a quasi-property right and more the legal right of the surviving next of kin to find "solace and comfort" in the ritual of the burial' " (*Shipley v City of New York*, 25 NY3d at 653, quoting *Melfi v Mount Sinai Hosp.*, 64 AD3d 26, 32 [2009]). "Damages are limited to the emotional suffering, mental anguish and psychological injuries and physical consequences thereof experienced by the next of kin as a result of the interference with the right of sepulcher" (*Shipley v City of New York*, 25 NY3d at 653; *see Melfi v Mount Sinai Hosp.*, 64 AD3d at 32, 36-37).

Public Health Law § 4201, entitled "Disposition of remains; responsibility therefor," identifies, in descending priority, those persons who shall have the right to dispose of a decedent's remains (*see* Public Health Law § 4201 [2] [a]). In the absence of a written instrument of designation, a decedent's surviving parents have priority over a court-appointed guardian (*see* Public Health Law § 4201 [2] [a] [iv], [vi]). However, if a decedent's surviving parents are not "reasonably available" to serve, and are not expected to become "reasonably available," then a court-appointed guardian has the right to control the disposition of the decedent's remains (Public Health Law § 4201 [2] [b]).

The legislative history surrounding the enactment and amendment of Public Health Law § 4201 with respect to the meaning of "reasonably available" is instructive. In 2005, the legislature was presented with a bill to amend Public Health Law § 4201 that defined "reasonably available" as meaning that a person "may be contacted with diligent effort" (Bill Jacket, L 2005, ch 768 at 12). However, this language was subsequently stricken by the legislature, and Public Health Law § 4201, as currently constituted, does not define what it means to be "reasonably available" (*see* Bill Jacket, L 2006, ch 76). In effect, the legislature rejected a requirement that the defendants undertake diligent efforts, to wit, persistent, assiduous, and careful steps (*see* Black's Law Dictionary [10th ed 2014], diligent), and instead determined that the concept of "reasonable availability" would be decided by the courts on a case-by-case basis (*see generally Mack v Brown*, 82 AD3d at 138-139).

Public Health Law § 4201 also provides that one who acts "reasonably and in good faith" is not subject to civil liability for, inter alia, disposing of a decedent's remains if done with

the reasonable belief that such disposal is consistent with the statute (*see* Public Health Law § 4201 [6] [b]).

Here, the defendants made a prima facie showing of entitlement to judgment as a matter of law (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]) by submitting evidence demonstrating that their actions concerning the decedent's burial were reasonable and made in good faith under the circumstances and in compliance with Public Health Law § 4201 (*see* Public Health Law § 4201 [6] [b]). The defendants' submissions demonstrated, prima facie, that, under the circumstances presented, the plaintiffs were not "reasonably available" to control the disposition of the decedent's remains (*see Mack v Brown*, 82 AD3d at 139-141). In opposition, the plaintiffs failed to raise a triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]). Accordingly, the Supreme Court erred in denying those branches of the defendants' separate motions which were for summary judgment dismissing the complaint insofar as asserted against each of them by Tuwanda, as administratrix of the decedent's estate, John Martin, and Emma Martin.

The plaintiffs' contentions that Conaty was not a guardian within the meaning of Public Health Law § 4201 (2) (a) (vi), and that the defendants waived a defense based on the provisions of Public Health Law § 4201, are improperly raised for the first time on appeal and have not been considered by this Court (*see Matter of Panetta v Carroll*, 62 AD3d 1010 [2009]; *Triantafillopoulos v Sala Corp.*, 39 AD3d 740 [2007]). Balkin, J.P., Roman, Sgroi and Duffy, JJ., concur.