■ CITY OF AMSTERDAM, Appellant, v RICHARD LAM et al., Defendants, and CIGNA INSURANCE COMPANY, Sued as CIGNA INSURANCE COMPANIES, Respondent. [703 NYS2d 606] —Peters, J. Appeal from an order of the Supreme Court (Best, J.), entered December 23, 1998 in Montgomery County, which granted defendant Cigna Insurance Company's motion for summary judgment dismissing the complaint against it.

In this case of first impression, a municipality seeks to hold an insurance company liable for "inducing arson" by overinsuring property. Upon these facts, we cannot find any duty owed to plaintiff since it was not in privity of contract.

Defendant Nissim Mizrachi, the owner and controller of defendant Nizmeister Realty Corporation, purchased a 100-year-old industrial building complex (hereinafter the complex) in the City of Amsterdam, Montgomery County, for $690,000 in January 1992. On or about February 4, 1992, Virginia Boyles, a commercial underwriter for defendant CIGNA Insurance Company, received an application for a commercial insurance policy for the complex from E. Kinker & Company, an Ohio insurance brokerage firm. Richard Lonneman, a broker with E. Kinker & Company, is alleged to have represented to CIGNA that the complex was rehabilitated into commercially valuable property consisting of offices and warehouses and that the individual buildings therein were partially rented and sprinklered for fire protection. On those representations, CIGNA issued a commercial insurance policy providing replacement cost coverage with policy limits of $14,154,000, effective January 31, 1992. The policy provided that if the buildings were not replaced after an "occurrence", the insured would receive the

actual cash value of the loss. In February 1992, Marcard Stein & Company, a German bank, lent Nizmeister Realty Corporation a total of $4,000,000 to aid in the rehabilitation of the complex. The policy's declaration sheets accordingly named such bank as a mortgagee.

After the issuance of coverage and subsequent to a request for an inspection of such property by CIGNA to Richard Savo, a former loss control representative, it is alleged that Lonneman continued to represent, as of March 1992, that the complex was sprinklered and at least 50% occupied. Anticipating 85% occupancy within the next 60 days, additional worksheets were transmitted between Lonneman and CIGNA. Savo contends that his numerous attempts to inspect the complex were foiled until August 12, 1992 when Mizrachi finally made the site available. Savo's inspection revealed that the buildings were not sprinklered for fire protection; that there was a 90% vacancy rate; and that structural, safety and mechanical improvements to the complex were not being made by Nizmeister. Concluding that the "buildings are in generally poor condition" and that "the complex has little economic value in its present state since major structural, mechanical and safety improvements will be necessary to provide a suitable space for any type of tenant", immediate cancellation of the insurance policy was recommended.

CIGNA contends, however, that Savo's loss control report was not received before August 28, 1992 when eight of the buildings were destroyed by fire and four others were damaged. Investigation revealed that the fire was intentionally set by Mizrachi who later pleaded guilty to criminal charges relating thereto. CIGNA paid approximately $4,000,000 to the mortgagee of the complex.

Plaintiff commenced this action to recover its expenses for extinguishing the fire and remediating the fire scene. It also sought punitive damages against CIGNA, amongst others, asserting that its issuance of this insurance policy for amounts far exceeding the value of the property induced the insured to commit arson. Alleging causes of action in negligence, conspiracy, intentional tort and breach of contract as a third-party beneficiary, CIGNA responded with a motion for summary judgment seeking a dismissal of the complaint by contending, *inter alia*, that it owed no duty to plaintiff. Supreme Court granted CIGNA's motion, prompting this appeal.

As plaintiff was not a party to this contract, no viable claim for negligence can exist unless contracting parties can be found to have owed a duty to plaintiff as a third-party beneficiary

(*see, Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220; *Leavitt-Berner Tanning Corp. v American Home Assur. Co.*, 129 AD2d 199, *lv denied* 70 NY2d 609). And, as the "party who seeks the status of a third-party beneficiary [it] has the burden of demonstrating that [it] has enforceable rights thereunder * * * which the * * * parties to the contract intended [it] to have" (*Leavitt-Berner Tanning Corp. v American Home Assur. Co., supra*, at 203 [citations omitted]).

The language of this contract clearly precludes plaintiff from meeting this burden. It provides that CIGNA only agreed to pay up to $1,000 for fire department service charges that the insured had assumed by contract prior to a recovered loss or as would be required to pay by local ordinance. By so specifying its liability due to fire loss, CIGNA clearly articulated its intention to be limited to these defined charges. Nor can a claim be predicated upon a failure to inspect. The contract states that CIGNA has "the right, but [is] not obligated to * * * [m]ake inspections and surveys at any time". It explains that the inspection is undertaken for CIGNA's own protection to reduce its risks, not "to perform the duty of any person or organization to provide for the health or safety of workers or the public". It proclaims no intention to "warrant that conditions * * * [a]re safe or healthful; or * * * [c]omply with laws, regulations, codes or standards." As CIGNA's ability to inspect under the contract was a right, not a duty, and an insurer does not have a duty to inspect the premises before issuing a policy (*see, Matter of James v State of New York*, 90 AD2d 342, 343, *affd* 60 NY2d 737; *see also, Jansen v Fidelity & Cas. Co.*, 165 AD2d 223, 226, *affd* 79 NY2d 867), plaintiff failed to meet its burden.

These facts further foreclose a claim of negligence predicated on the limited exception for those not in privity of contract. The exception may apply if: "(1) the defendant contracting party was aware that his performance under the contract * * * was to be used for a particular purpose, (2) the defendant knew that a known third party was *intending to rely* upon the defendant's performance, and (3) there has been some conduct on the part of the defendant, linking the defendant to the third party, which evinces the defendant's understanding of the third party's reliance" (*Leavitt-Berner Tanning Corp. v American Home Assur. Co., supra*, at 202 [emphasis supplied], citing *Credit Alliance Corp. v Andersen & Co.*, 65 NY2d 536, 551). (*See also, Matter of James v State of New York, supra*, at 344.) No record evidence here indicates that CIGNA agreed to have plaintiff rely upon its inspection of the subject premises before it issued a policy of insurance as a means to somehow obviate

its obligation under applicable building, housing or zoning codes to perform its own safety inspection.

Nor can we find that CIGNA induced Mizrachi to commit arson by its issuance of an excessive insurance policy since such act was not foreseeable as a matter of law. "[T]he mere existence of an intervening criminal act by a third person will not completely absolve a defendant * * * from liability[] where the defendant[] should have reasonably anticipated a risk of harm from criminal activity" (*Rodriguez v Mohr*, 174 AD2d 382). In our view, no risk of harm could have been anticipated here since representations were made to CIGNA that the complex was rehabilitated into commercially valuable space, had a 50% occupancy rate and was fully equipped with a sprinkler protection system (*cf., New York Cent. Mut. Fire Ins. Co. v City of Albany*, 247 AD2d 815).

Cardona, P. J., Mercure and Mugglin, JJ., concur. Ordered that the order is affirmed, with costs.