[984 NYS2d 550]

Jo Drever, Claimant, v State of New York, Defendant. (Claim No. 118931.)

Court of Claims, March 14, 2014

## APPEARANCES OF COUNSEL

*Eric T. Schneiderman, Attorney General (Joan Matalavage* of counsel), for defendant.

*Law Offices of Bonita E. Zelman (Bonita E. Zelman* of counsel) for claimant.

## OPINION OF THE COURT

JUDITH A. HARD, J.

Defendant moves this court for an order pursuant to CPLR 3212 for summary judgment dismissing the claim on the basis that it has no merit.[1] Claimant cross-moves for an order pursu-

---

1. Defendant also moved for permission to file and serve an amended answer pursuant to CPLR 3025 which the court granted by decision and order dated January 2, 2013.

ant to CPLR 3212 for summary judgment in favor of claimant on the issue of liability. For the reasons set forth below, the court partially grants and partially denies each party's motion. The court determines that defendant has violated claimant's common-law right of sepulcher and is not immune from liability for its actions.

### Facts

On August 25, 2009, claimant's mother, Margaret A. Lanza, passed away. The following day, while claimant was at the decedent's residence, she received a telephone call from a woman who identified herself as the Donor Coordinator of the New York Organ Donor Network, thanking her for her mother's gift. Claimant could not understand what the woman was saying and gave the phone to her fiancée, who later told her that her mother's eyes had been donated. Claimant subsequently received confirmation that her mother was registered in the New York State Donate Life Organ and Tissue Donor Registry (Donor Registry) maintained by the New York State Department of Health (DOH) and that the registration source was the New York State Department of Motor Vehicles (DMV).

According to claimant, the decedent did not wish to be an organ donor and had asked claimant to review her license renewal application, which the decedent completed on August 5, 2009, to make sure that it was completed accurately. Claimant reviewed the application and informed her mother that it had been done so. The decedent had not signed the space on her driver's license renewal application consenting to be registered in the Donor Registry. However, there was a line in the space provided for the signature.[2] When the application was received by DMV, it was processed as an organ donor application and decedent was registered in the Donor Registry by the DOH.[3] A thank you letter was sent to decedent's residence on August 24,

---

2. Said driver's license renewal application was originally annexed to defendant's motion for summary judgment as exhibit J, and was subsequently incorporated into claimant's attorney's affirmation in support of claimant's cross motion for summary judgment and in opposition to defendant's motion for summary judgment at page 3.

3. Defendant's witness, William Mogavero, testified that when applications for a license or the renewal of a license are received, the person opening the mail sorts the applications into batches, one of which is for applicants who have consented to being a donor. The application is then reviewed by a second person who makes sure the application is in the right batch and, if it is, feeds the application through a remittance processor, a device which transmits information from the application onto the mainframe.

2009, thanking her for enrolling in the Donor Registry, informing her of what the donor's consent means, and stating that if she wished to withdraw her consent at any time, she may do so. The decedent's death on August 25, 2009 preceded her receipt of the aforesaid letter.

## Procedural History

Claimant served a notice of intention to file a claim upon the Attorney General of the State of New York on November 23, 2009, and followed with service of this claim on September 13, 2010. The claim alleges that defendant violated claimant's right of sepulcher, which gives her the right to possess her mother's body for preservation and burial. The claim also alleges causes of action for negligence, negligent and intentional infliction of emotional distress, and punitive damages. Specifically, claimant alleges that defendant was negligent in the establishment, administration and operation of the Donor Registry; in the administration of the DMV unit which transmits donor "consent" information to the DOH; in DMV's erroneous enrollment of the decedent without her consent in the donate life registry through DMV; in engaging in improper organ and tissue procurement in a careless and negligent manner; and in the failure to inform decedent's family and next of kin at the time of death that decedent was listed as a donor in the Donor Registry, which would have alerted claimant to correct the mistake since the decedent never gave her consent.

Defendant moved for an order of summary judgment dismissing the claim on the basis that it has no merit. The crux of defendant's argument is that the State should not be liable for a violation of the right of sepulcher, negligence, intentional and/or negligent infliction of emotional distress or punitive damages, because the decedent was registered as an organ donor, defendant's administration of DMV, DOH and the Donor Registry was done in good faith, and defendant is immune from liability.

Claimant opposes defendant's motion on the basis that there are triable issues of fact present. Specifically, claimant argues that defendant's entire basis for seeking summary judgment rests on the fact that the decedent's driver's license renewal application had a "mark" in the place where the form called for a signature in order to consent to be an organ donor when no reasonable person would have construed such a "mark" as a signature giving consent to be an organ donor. Claimant cross-moves for an order of summary judgment in her favor based in

large part upon the fact defendant's own witness admitted that the decedent should not have been treated as having given her consent to be an organ donor on her driver's license renewal application.

■ To the extent defendant argues that claimant's cross motion is untimely, the court disagrees. The court had granted a request by claimant, which was made with the consent of defendant, for an adjournment of defendant's motion and it was within claimant's prerogative to serve a cross motion. Moreover, even if the cross motion was untimely, an untimely cross motion may be considered on its merits when it and the timely motion address essentially the same issues (*Lapin v Atlantic Realty Apts. Co., LLC*, 48 AD3d 337 [1st Dept 2008]). In the present case, the issues raised in claimant's cross motion for summary judgment are essentially the same as those raised in defendant's timely motion for summary judgment. In addition, it is within the court's discretion to search the record and award judgment to an opposing party when a moving party moves for summary judgment (CPLR 3212 [b]).

■ The court further disagrees with defendant that claimant's cross motion for summary judgment must be denied on the basis that claimant failed to attach an affidavit from a person having knowledge of the facts. Defendant argues that the transcript of claimant's General Municipal Law § 50-h hearing is insufficient because it was taken in a companion action in which defendant was not a party and because defendant had no opportunity to be present pursuant to CPLR 3117. However, CPLR 3117 governs the use of depositions at trial and hearings, whereas CPLR 3212 (b) governs the types of proof allowable in support of a motion for summary judgment. The type of proof allowable in support of such summary judgment motions has been determined to include any item of proof as reliable as an affidavit (*see State of New York v Metz*, 241 AD2d 192, 200 [1st Dept 1998]). In this claim, claimant's testimony at said 50-h hearing was taken under oath by an adverse party and was, notably, relied upon by defendant in support of its motion for summary judgment. It was not being used by claimant to impeach an adverse party's witnesses. Accordingly, the court concludes that the transcript of claimant's 50-h hearing constitutes supporting proof under CPLR 3212.

## Law and Analysis

Summary judgment is a drastic remedy which should not be granted unless it is clear that there are no triable issues of fact

(*Andre v Pomeroy*, 35 NY2d 361, 364 [1974]). The court's function in a motion for summary judgment is not to resolve issues of fact, but to determine whether issues of fact exist (*Barr v County of Albany*, 50 NY2d 247 [1980]).

The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (*Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]). "Material" has been defined as "substantial; of consequence; important; going to the essence or the merits; relating to matter of substance, rather than form" (*Wanger v Zeh*, 45 Misc 2d 93, 96 [Sup Ct, Albany County 1965], citing Ballentine's Law Dictionary, *affd* 26 AD2d 729 [3d Dept 1966]). A moving party's failure to demonstrate that there are no material issues of fact requires denial of a summary judgment motion, regardless of the sufficiency of the opposing party's papers (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]). However, once a moving party has demonstrated that there are no such material issues of fact, the burden shifts to the opponent of the motion to produce evidentiary proof, in admissible form, sufficient to establish the existence of material issues of fact which require a trial of the action (*Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986], *supra*; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985], *supra*; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). The evidence must be viewed in the light most favorable to the opponent of the motion, and that party should be given every favorable inference (*McKinnon v Bell Sec.*, 268 AD2d 220 [1st Dept 2000]).

Right of Sepulcher

The right of sepulcher permits the next of kin the right to recover for solely emotional damages which may arise out of an interference with their loved one's body after death (*see Matter of Human Tissue Litig.*, 38 Misc 3d 184 [Sup Ct, Richmond County, Aug. 16, 2012]). It is based in part on the solace and comfort felt by the next of kin in the act of ritual burial (*id.*).

To establish a cause of action for interference with the right of sepulcher, claimant must establish six factors: (1) claimant is decedent's next of kin; (2) claimant had the right to possess decedent's remains; (3) defendant interfered with claimant's right to immediate possession of decedent's body; (4) the interference was unauthorized; (5) claimant was aware of the interference; and (6) the interference caused claimant mental anguish or distress (*see Booth v Huff*, 273 AD2d 576 [3d Dept

2000]; *Shipley v City of New York*, 80 AD3d 171 [2d Dept 2010]). Right of sepulcher cases are a subset of negligence causes of action (*Matter of Human Tissue Litig.*, 38 Misc 3d at 199).

The next of kin's mental anguish in situations in which there has been an interference with the next of kin's possession of his or her loved one's body is generally presumed, but it cannot be felt until the next of kin is aware of said interference (*Melfi v Mount Sinai Hosp.*, 64 AD3d 26 [1st Dept 2009]).

In the present case, it is not disputed that claimant, as the decedent's adult daughter and only child, is the decedent's next of kin, and therefore, she had the right to possess the decedent's body. What is disputed is whether defendant interfered with claimant's right to immediate possession of decedent's body and whether the interference was unauthorized.

Defendant argues that it did not interfere with claimant's right to possess decedent's intact body because the decedent had "marked" the organ donation consent box on the application, thereby consenting to the donation of her organs. In opposition, claimant argues that no reasonable person could construe the line in the place where the form called for a signature as the decedent's signature, particularly when compared to decedent's actual signature at the bottom of the renewal application. In support of her position, claimant attached the relevant portions of the decedent's driver's license renewal application. On the top left side, in the section entitled "DONOR CONSENT," there is a line drawn in the space provided for the signature of an applicant who is consenting to be a donor. Below and to the right, in the section which calls for the signature of the renewal applicant, is the decedent's very legible signature. There is no question that the line at the top does not even remotely resemble the signature on the bottom.

Moreover, one of defendant's own witnesses, William Mogavero, the Upstate Regional Director of DMV, who on the date of the subject incident was the Albany District Director, confirms that the line in the "DONOR CONSENT" section was an ambiguous mark that should *not* have been treated as a signature reflecting the decedent's consent to be an organ donor.

Based upon the foregoing, the court concludes that the decedent did not consent to being an organ donor, and that the harvesting of the decedent's eyes constituted an unauthorized interference with claimant's right to immediate possession of her mother's intact body.

Accordingly, to the extent defendant's motion for summary judgment seeks dismissal of claimant's cause of action alleging a violation of her right of sepulcher, it is denied and claimant's cross motion seeking summary judgment in her favor on said cause of action is granted.

Immunity

■ Defendant argues that even if the court were to find that it was negligent, it is immune from liability based upon common-law governmental immunity. In opposition, claimant argues that defendant is not protected by governmental immunity because the registration for organ donation banks is a proprietary function. The court agrees.

Whenever a negligence claim is asserted against the State, the first issue the court must consider is whether the State's alleged negligence arose out of the performance of a governmental, rather than a proprietary, function (*see Sebastian v State of New York*, 93 NY2d 790 [1999]). If the State's actions fall in the proprietary realm, it is subject to the ordinary rules of negligence applicable to nongovernmental parties (*see Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428, 446-447 [2011]).

As set forth herein above, a sepulcher cause of action is a subset of negligence causes of action (*Matter of Human Tissue Litig.*, 38 Misc 3d at 199). Accordingly, this court must determine whether DMV's actions in enrolling organ donors into the Donor Registry constitutes a governmental or proprietary act.

A government entity performs a purely proprietary role when its "activities essentially substitute for or supplement traditionally private enterprises" (*Applewhite v Accuhealth, Inc.*, 21 NY3d 420, 425 [2013] [internal quotation marks omitted], quoting *Sebastian*, 93 NY2d at 793), which is logical as the waiver of state sovereignty allows the State to be sued as individuals or corporations (Court of Claims Act § 8). The *Applewhite* Court noted that a municipality is engaged in a governmental function when acts are "undertaken for the protection and safety of the public pursuant to the general police powers" (*Applewhite*, 21 NY3d at 425 [internal quotation marks omitted], quoting *Sebastian*, 93 NY2d at 793). The Court cited a long list of governmental services stemming from a protective or safety role: security operations at the World Trade Center (*see Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428 [2011]); oversight of juvenile delinquents (*see Sebastian*, 93 NY2d 790); the issuance of building permits or certificates of occupancy (*see Rottkamp v Young*,

15 NY2d 831 [1965]); certifying compliance with the fire safety codes (*see Garrett v Holiday Inns*, 58 NY2d 253 [1983]); teacher supervision of public school playgrounds (*see Bonner v City of New York*, 73 NY2d 930 [1989]); boat inspections (*see Metz v State of New York*, 20 NY3d 175 [2012]); garbage collections (*see Nehrbas v Incorporated Vil. of Lloyd Harbor*, 2 NY2d 190 [1957]); and medical services delivered by the government in hospital type settings (*see Schrempf v State of New York*, 66 NY2d 289 [1985]). The instant action is distinguishable because it concerns a state governmental agency acting as a conduit for the charitable donation of body parts. It is not undertaken for the protection and safety of the public pursuant to the general police powers of government.

Moreover, the enrollment of organ donors has been and continues to be the function of private enterprises as well as governmental entities. As set forth in the deposition transcript of Kimberly Valente, a health policy associate employed by DOH who supervises the Organ Donation and Transplant Unit, individuals wanting to donate their organs would need to provide their legal consent (EBT of Valente, annexed to defendant's motion as exhibit H at 13-14). Although DMV signs up the vast majority of donors, there are many other sources, some governmental and some not, that enroll organ and tissue donors (voter registration forms; local organ procurement organizations; tissue and eye banks; and the Department of Health) (*id.* at 14).

In defendant's response to claimant's notice for discovery and inspection, which is annexed to defendant's motion for summary judgment as exhibit F, there is a list of enrollment counts by various sources. The following organizations enrolled donors under the previous registry (intent) as well as the current registry (consent): Center for Donation and Transplant in New York; DOH Transplant Unit; DMV; English Website; Eye Bank for Restoration; Finger Lakes Donor Recovery Network; New York Organ Donor Network; Rochester Eye and Human Parts Registry; and Upstate New York Transplant Services (*see* defendant's exhibit F). Clearly, recording a person's consent for organ donation was not and is not limited to governmental donation sources.

In finding that EMT services provided by private entities are immune from liability, the *Applewhite* Court expanded the definition of private activities that may be covered by governmental function immunity by adopting a test set forth in *Edwards v*

*City of Portsmouth* (237 Va 167, 375 SE2d 747 [1989]), that "the test cannot be whether the same thing is done by private entities, but rather whether, in providing such services, the governmental entity is exercising the powers and duties of government conferred by law for the general benefit and well-being of its citizens" (*Applewhite*, 21 NY3d at 428-429, quoting *Edwards*, 237 Va at 171-172, 375 SE2d at 750). The reliance on this broad test from Virginia could trigger a governmental immunity defense for any type of services authorized by the New York State Legislature. Feasibly, New York provides more statutory services than Virginia, which may be provided by private entities. Under *Applewhite*, all of these statutory services, if contracted out by the State to private entities, could be immune from liability in negligence claims. Such a broad brush approach is contrary to this State's waiver of immunity pursuant to the Court of Claims Act that enables the State to be sued as an individual or private corporation (Court of Claims Act § 8).

Based upon the foregoing, the court concludes that DMV's enrollment of organ donors into the registry constitutes a proprietary activity not protected by governmental immunity.

Further evidence in support of the finding that defendant's activity herein is proprietary is found in an alternative argument. As set forth below, if the court were to conclude that DMV's activity was governmental, it would be constrained to find that no special duty existed, thereby immunizing the act at issue and effectively abolishing the right of sepulcher whenever asserted against the State.

A special duty can be created in one of three ways: (1) when a statute that was enacted for the benefit of a particular class of persons is violated; (2) by voluntary assumption of a duty toward a private party who then justifiably relies on proper performance of that duty; or (3) by assuming positive direction and control in the face of a known, blatant and dangerous safety violation (*Pelaez v Seide*, 2 NY3d 186, 199-200 [2004], citing *Garrett v Holiday Inns*, 58 NY2d 253, 261-262 [1983]). The only applicable test herein would be the government's voluntary assumption of a duty. To satisfy this test, claimant would need to prove: (1) the assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of a municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) the injured party's justifiable reliance on the municipali-

ty's affirmative undertaking (*Cuffy v City of New York*, 69 NY2d 255 [1987], cited in *McLean v City of New York*, 12 NY3d 194, 201 [2009]; *Pelaez v Seide*, 2 NY3d at 198-199). However, claimant could never sustain the third prong, because although she, as the next of kin, is the injured party herein, the direct contact was with the decedent.[4]

Thus, under the special duty tests for governmental immunity, this claimant, or any other claimant who is next of kin, could never maintain a claim of sepulcher against DMV. As noted above, the common-law right of sepulcher would effectively be abolished when applied against any state entity. The State admitted during oral argument that the right of sepulcher could no longer be maintained against DMV (tr at 43). Affording defendant immunity from the acts complained of herein would allow employees of DMV to carelessly process driver's license renewal applications without giving due consideration to the licensee's intentions to be an organ donor.

Based upon the foregoing, the court concludes that the act complained of herein constitutes a proprietary act which is not subject to governmental immunity.

## Intentional Infliction of Emotional Distress

■ It is well settled that causes of action alleging the intentional infliction of emotional distress against the State are prohibited as against public policy (*Ellison v City of New Rochelle*, 62 AD3d 830 [2d Dept 2009]; *Brown v State of New York*, 125 AD2d 750 [3d Dept 1986], *lv dismissed* 70 NY2d 747 [1987]; *De Lesline v State of New York*, 91 AD2d 785 [3d Dept 1982], *lv denied* 58 NY2d 610 [1983]).

Moreover, as set forth by defendant, even if causes of action for intentional infliction of emotional distress against the State were allowed, said cause of action herein would be untimely. Court of Claims Act § 10 (3-b) states, in relevant part, that

> "[a] claim to recover damages for injuries to property or for personal injuries caused by the intentional tort of an officer or employee of the state while acting as such officer or employee . . . shall be filed and served upon the attorney general within ninety days after the accrual of such claim, unless the claimant shall within such time serve upon the

---

**4.** The relationship between claimant and the decedent is not one which would allow the requisite direct contact to run to claimant (*see Sorichetti v City of New York*, 65 NY2d 461 [1985]; *Laratro v City of New York*, 8 NY3d 79 [2006]).

attorney general a written notice of intention to file a claim therefor, in which event the claim shall be filed and served upon the attorney general within one year after the accrual of such claim."

The accrual of the claim herein is alleged to be August 26, 2009. A notice of intention to file a claim was served on November 23, 2009. Accordingly, claimant had until August 26, 2010 by which to file and serve her claim alleging an intentional tort. Claimant did not file her claim until September 13, 2010, making any cause of action for intentional infliction of emotional distress untimely.

Accordingly, to the extent defendant's motion for summary judgment seeks dismissal of claimant's cause of action alleging the intentional infliction of emotional distress, it is granted and said cause of action is dismissed.

Negligent Infliction of Emotional Distress

While claims for negligent infliction of emotional distress cannot generally be maintained against the State or a governmental entity, there are limited circumstances in which they may be maintained (*Lauer v City of New York*, 95 NY2d 95, 114 [2000]). Such circumstances include when the claim is premised upon "conduct that unreasonably endangers the [claimant's] physical safety" (*Losquadro v Winthrop Univ. Hosp.*, 216 AD2d 533, 534 [2d Dept 1995]) or upon certain exceptional circumstances that have been specifically delineated by the courts, to wit: incorrectly informing someone of a death (*Johnson v State of New York*, 37 NY2d 378, 381-382 [1975]); the negligent exposure to the HIV virus (*Ornstein v New York City Health & Hosps. Corp.*, 10 NY3d 1 [2008]); and the negligent mishandling of a corpse (*see Johnson v State of New York*, 37 NY2d at 382), which is alleged herein.

Notwithstanding the foregoing, however, "a cause of action for infliction of emotional distress is not allowed if essentially duplicative of tort or contract causes of action" (*Wolkstein v Morgenstern*, 275 AD2d 635, 637 [1st Dept 2000], citing *Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303 [1983]). In the present case, claimant's causes of action for negligence and negligent infliction of emotional distress are duplicative of the loss of sepulcher claim as they seek relief for the same damages sustained by claimant upon learning that her mother's organs were improperly harvested.

Accordingly, the causes of action for negligence and negligent infliction of emotional distress must be and hereby are dismissed

(*see Matter of Human Tissue Litig.*, 38 Misc 3d 184 [Sup Ct, Richmond County 2012]).

Punitive Damages

Claimant alleges that she is entitled to punitive damages. However, it is well settled that the State's waiver of sovereign immunity effected by Court of Claims Act § 8 does not permit punitive damages to be assessed against the State or its political subdivisions (*Sharapata v Town of Islip*, 56 NY2d 332 [1982]).[5]

Accordingly, to the extent defendant's motion for summary judgment seeks dismissal of said cause of action, it is granted.

## Conclusion

Based upon the foregoing, the court grants defendant's motion for summary judgment to the extent it seeks dismissal of the causes of action for intentional infliction of emotional distress and punitive damages, and denies the motion as to claimant's other causes of action. The court grants claimant's cross motion for summary judgment on the cause of action for right of sepulcher and denies it as to the causes of action for negligence and negligent infliction of emotional distress.

---

5. Defendant argues that even if the court were to find that it is negligent, it is also immune from liability because it exercised good faith in accordance with Public Health Law § 4306. However, in claimant's opposition papers, claimant argues that defendant's reliance upon the good faith standard set forth in Public Health Law § 4306 is erroneous because claimant is not alleging a violation of Public Health Law § 4310, which requires the State to establish an organ donor registry, but negligence on the part of defendant's employees in the processing of the decedent's driver's license renewal application. Accordingly, to the extent claimant alleged a violation of the Public Health Law, it is deemed waived.